STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

CW 07-331, CW 07-400
consolidated with CA 07-264

DR. CLARK GUNDERSON, ET AL.

VERSUS

F. A. RICHARD & ASSOCIATES, INC., ET AL.

**********
APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2004-2417
HONORABLE ROBERT LANE WYATT, DISTRICT JUDGE
**********

JOHN D. SAUNDERS
JUDGE

**********

Court composed of John D. Saunders, Jimmie C. Peters, and Glenn B. Gremillion, Judges.

PETERS, J., concurs in the result and assigns additional reasons.

GREMILLION, J., concurs in the results for the reasons assigned by Judge Peters in his concurring opinion.


WRITS DENIED; AFFIRMED.

William B. Monk
Stockwell, Sievert, et al.
P. O. Box 2900
Lake Charles, LA 70602-2900
(337) 436-9491
Counsel for Plaintiff/Appellee:
Dr. Clark Gunderson

Thomas A. Filo
Cox, Cox, Fily & Camel, L.L.P.
723 Broad Street
Lake Charles, LA 70601
(337) 436-6611
Counsel for Plaintiff/Appellee:
Dr. Clark Gunderson

**Arthur M. Murray**
**The Murray Firm**
**909 Poydras St., Suite 2550**
**New Orleans, LA 70112-4000**
**(504) 525-8100**
**Counsel for Plaintiff/Appellee:**
**Dr. Clark Gunderson**

**Perry Staub, Jr.**
**Taggart, Morton, et al.**
**1100 Poydras, Suite 2100**
**New Orleans, LA 70163-2100**
**(504) 599-8512**
**Counsel for Defendant/Appellant:**
**First Health Group, Corp.**

**John E. Galloway**
**Galloway, Johnson, et al**
**701 Poydras St., 40th Floor**
**New Orleans, LA 70139-4003**
**(504) 525-6802**
**Counsel for Defendant/Appellant:**
**F. A. Richard & Associates, Inc.**

**Todd A. Rossi**
**Kean, Miller, etc**
**P. O. Box 3513**
**Baton Rouge, LA 70821**
**(225) 387-0999**
**Counsel for Defendant/Appellee:**
**Focus Healthcare Management, Inc.**

**Michael D. Kendall**
**McDermott Will & Emery**
**28 State Street**
**Boston, MA 02109-1775**
**(617) 535-4085**
**Counsel for Defendant/Appellee:**
**Focus Healthcare Management, Inc.**

**David W. O'Quinn**
**Irwin, Fritchie, et al.**
**400 Poydras Street, Suite 2700**
**New Orleans, LA 70130**
**(504) 310-2100**
**Counsel for Defendant/Appellant:**
**Cambridge Integrated Services, Inc.**

**Janice Unland**
**Rabalais, Unland , et al.**
**5100 Village Walk, Suite 300**
**Covington, LA 70433**
**(985) 893-9900**
**Counsel for Third Party Appellant:**
**National Loss Control Management, Inc.**

**Edward P. Sensenbrenner**
**Adams & Reese, L.L.P.**
**4500 One Shell Square**
**New Orleans, LA 70139**
**(504) 581-3234**
**Counsel for Third Party Appellant:**
**AIG Claims Service, Inc.**

**Theodore R. Scarborough**
**Sidley Austin, LLP**
**One South Dearborn**
**Chicago, IL 60603**
**(312) 853-7000**
**Counsel for Third Party Appellant:**
**AIG Claims Service, Inc.**

**SAUNDERS**, Judge.

In these consolidated writs, the defendants, National Loss Control Management, Inc. and AIG Domestic Claims, Inc. (hereinafter "the defendants"), seek review of the trial court's judgment denying their exceptions of lack of subject matter jurisdiction. They also appeal the trial court's ruling certifying the matter as a class action. For the following reasons, we deny the application for supervisory writs on the trial court's denial of the defendants' subject matter exception and affirm the trial court's ruling certifying this matter as a class action.

**FACTS AND PROCEDURAL HISTORY:**

On April 14, 2004, the plaintiffs, Clark A. Gunderson, M.D. (A Medical Corporation), Beutler-England Chiropractic Clinic, and Frank W. Lopez, M.D. (A Professional Medical Corporation)(hereinafter "the healthcare providers"), filed the instant Petition for Damages, Injunctive Relief, and Class Certification. Southwest Louisiana Hospital Association d/b/a Lake Charles Memorial Hospital was added as an additional plaintiff in an amending petition. The following parties were named as defendants: F.A. Richard & Associates, Inc.; First Health Group Corporation; Focus Healthcare Management, Inc.; Cambridge Integrated Services Group, Inc.; National Loss Control Management, Inc.; and AIG Claim Services, Inc (hereinafter "AIG"). The healthcare providers subsequently entered into a Memorandum of Understanding with defendant AIG, and this court signed on November 14, 2007, a court order staying the instant matter as to AIG during the pendency of the class settlement proceedings.

In their petition, the healthcare providers stated that the defendants had entered into contracts with them pursuant to the Preferred Provider Organization Act (hereinafter "PPOA"), La.R.S. 40:2201 et seq., which allowed them to pay a

discounted rate for the provision of health care. They alleged that the defendants routinely reimbursed them in workers' compensation cases at the lower Preferred Provider Organization (hereinafter "PPO") contracted rates, rather than at the higher mandated workers' compensation rates. La.R.S. 23:1203(B). In doing so, the healthcare providers claim that the defendants violated the provisions of La.R.S. 40:2203.1 by failing to provide them with prior notice of their intent to reimburse at the PPO rates either by providing the injured worker with a PPO card or by providing thirty days' written notice of their intent to utilize an existing PPO agreement. La.R.S. 40:2203.1(B). In addition to the penalties provided by La.R.S. 40:2203.1(G), the healthcare providers sought an injunction and certification of the matter as a class action.

Two and a half years into the litigation, each defendant filed a declinatory exception of lack of subject matter jurisdiction alleging that the Office of Workers' Compensation (hereinafter "OWC") had exclusive jurisdiction over this matter. This came about as a result of this court's holding in *Southwest Louisiana Hospital Association v. Superior Carriers, Inc.*, 06-807 (La.App. 3 Cir. 11/2/06), 942 So.2d 754. There, we held that La.R.S. 23:1310.3(E), as amended, granted "exclusive jurisdiction over contractual and coverage disputes . . . to workers' compensation judges." *Id.* at 755-56. Following a hearing, the trial court denied the defendants' exceptions, and the defendants sought supervisory writs. The trial court later certified this matter as a class action, and the defendants appealed that decision to this court. These matters have been consolidated for disposition by this court.

**ASSIGNMENTS OF ERROR:**

1.    Did the trial court commit legal error when it concluded that it, and not the OWC, possessed jurisdiction to adjudicate plainiffs' claims that the

2

reimbursements at issue violated the Lousiana PPO Act?

2.    Did the trial court abuse its discretion in certifying this matter for class action treatment under La.Code Civ.P. art. 591?

**ASSIGNMENT OF ERROR #1:**

The defendants first seek supervisory writs, arguing that the trial court erred in concluding that it possessed subject matter jurisdiction over the claims asserted in this action.

Subject matter jurisdiction is "the legal power and authority of a court to hear and determine a particular class of actions or proceedings." La.Code Civ.P. art. 2. Any judgment rendered by a court that lacks subject matter jurisdiction is null. La.Code Civ.P. arts. 2001, 2002; *Bryant v. Pierson*, 583 So.2d 97 (La.App. 3 Cir. 1991).

"Except as otherwise authorized by [the] constitution or *except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters*, a district court shall have original jurisdiction of all civil and criminal matters." La.Const. art. 5, § 16(A)(1) (emphasis added). Louisiana Revised Statute 23:1310.3 provides for the original jurisdiction afforded to the OWC under the Worker's Compensation Act (hereinafter "WCA") as follows:

> Except as otherwise provided . . . the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes *arising out of this Chapter*, including but not limited to workers' compensation insurance coverage disputes, *group self-insurance indemnity contract disputes*, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, *and cross-claims between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution*, concursus proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

3

La.R.S. 23:1310.3(E) (emphases added). "This court will not read La.R.S. 23:1310.3 more broadly than its explicit language since the general rule is that district courts are vested with original jurisdiction and exceptions to this general rule are to be narrowly construed." *Covington v. A-Able Roofing, Inc.*, 95-1126, p. 3 (La.App. 3 Cir. 3/6/96), 670 So.2d 611, 613 (citing *Cajun Bag & Supply v. Baptiste*, 94-1218 (La.App. 3 Cir. 3/1/95), 651 So.2d 943). Thus, unless the health care providers' claims at issue here explicitly "arise out of" the WCA, original jurisdiction over those claims must lie with the district court, and not with the OWC.

The defendants contend that this court's holding in *Southwest*, 942 So.2d 754, mandates the original, exclusive subject matter jurisdiction of the OWC in the instant case. There, a healthcare provider rendered medical services to an employee of the defendant-employer, who then reimbursed the healthcare provider at the discounted rate provided for in a PPO contract, rather than at the rate called for by the workers' compensation reimbursement schedule. The healthcare provider thereafter filed a petition for declaratory relief in the district court, asking the court to declare the discount invalid and unenforceable for failing to comply with the PPOA, and for discounting the workers' compensation bill below the amount allowable under the workers' compensation fee schedule. The trial court granted both of the healthcare provider's requests. On appeal, this court reversed the trial court's judgment on grounds that this court's disposition of a previous case dictated that the trial court lacked subject matter jurisdiction:

> In *Beutler England [Chiropractic Clinic v. Mermentau Rice, Inc.*, 05-942 (La.App. 3 Cir. 5/31/06), 931 So.2d 553]*, the court held that La.R.S. 23:1310.3(E), as amended, applies retroactively and grants original and exclusive jurisdiction over contractual and coverage disputes like the ones in the case at bar to workers' compensation judges. LCMH argues that, even if that is the case, the district court had

4

jurisdiction over the claim for violation of La.R.S. 40:2203.1 and that part of the judgment should stand. We are unpersuaded by this argument. Aside from the court's interest in avoiding piecemeal litigation, the resolution of that dispute affects the payment of benefits under the workers' compensation act and, therefore, the Office of Workers' Compensation had exclusive jurisdiction. Accordingly, the district court lacked subject matter jurisdiction in this case.

*Id.* at 755-56. Based on the combined reasoning of *Southwest* and *Buetler,* then, the defendants argue that all claims challenging reimbursements that are covered by workers' compensation insurance and discounted pursuant to a PPO contract are subject to the original, exclusive jurisdiction of the OWC, regardless of whether the claim is asserted as a violation of the WCA or of the PPOA. We disagree.

The defendants rely on *Southwest*'s wholesale incorporation of the holding in *Buetler* for the proposition that, because *Buetler* previously found that a claim involving a dispute between a healthcare provider and an employer regarding the alleged underpayment of medical bills incurred for treatment of work-related injuries "arose out of" the WCA, claims relating to *all* such disputes necessarily must "arise out of" that legislation. Such a reading is not supported by *Buetler*. On the contrary, as *Buetler* makes clear, jurisdiction hinges properly on the nature of the specific claim asserted: "[I]f the claim actually arises out of the act, the OWC has jurisdiction to decide the case; if the cause of action merely relates to workers' compensation in general, the district court has the jurisdiction to decide the case." *Buelter*, 931 So.2d at 556. Thus, notwithstanding the defendants' reading of *Southwest*, the dispositive question presented by the case at bar is the same as that posed in all jurisdictional disputes involving the WCA: does the cause of action asserted in the instant case arise out of the WCA, or does it merely relate to workers' compensation in general? If the former scenario proves true, then original and exclusive jurisdiction must lie with the OWC; if the latter, then the OWC has no competence to hear the claim, and jurisdiction must lie instead with the district court.

5

Here, the health care providers argue that the cause of action asserted "arises" not out of the WCA at all, but out of the PPOA. We agree. In pertinent part, La.R.S. 40:2203.1(B) provides:

> A preferred provider organization's alternative rates of payment shall not be enforceable or binding upon any provider unless such organization is clearly identified on the benefit card issued by the group purchaser or other entity accessing a group purchaser's contractual agreement or agreements and presented to the participating provider when medical care is provided . . . .
> . . . .
> (5) When no benefit card is issued or utilized by a group purchaser or other entity, written notification shall be required of any entity accessing an existing group purchaser's contractual agreement or agreements at least thirty days prior to accessing services through a participating provider under such agreements.

Further, La.R.S. 40:2203.1(G) provides:

> Failure to comply with the provisions of Subsection A, B, C, D, or F of this Section shall subject a group purchaser to damages payable to the provider of double the fair market value of the medical services provided, but in no event less than fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court. *A provider may institute this action in any court of competent jurisdiction.*

(Emphasis added). Within the context of these provisions, the health care providers' assertion that their claims arise out of the PPOA proves justified. Rather than engendering claims provided for by the WCA, the claims asserted before the district court in the case at bar—namely, those alleging the defendants' failure to issue benefit cards or to issue adequate prior written notice—arise explicitly out of the provisions of the PPOA. As such, we must find this assignment of error to be without merit. Where, as here, the claim asserted is provided for clearly in some legislation other than the WCA—in this case, La.R.S. 40:2203.1—there can be no question whether that claim "arises out of" the WCA; it does not, for it arises out of a separate act of the legislature, entirely. Thus, original and exclusive jurisdiction over such a claim must rest with the district court, regardless of the claim's "relat[ion] to worker's

6

compensation in general." *Beutler*, 931 So.2d at 556.

In reaching this result, we note further that our reasoning here partially brings this court into conflict with its own language in *Southwest*. There, having first decided that La.R.S. 23:1310.3(E) conferred original and exclusive jurisdiction over claims arising out of the WCA to the OWC, we concluded almost as an afterthought that jurisdiction over the simultaneously-asserted PPOA claim also necessarily must lie with the OWC:

> LCMH argues that . . . the district court had jurisdiction over the claim for violation of La.R.S. 40:2203.1 and that part of the judgment should stand. We are unpersuaded by this argument. *Aside from the court's interest in avoiding piecemeal litigation, the resolution of that dispute affects the payment of benefits under the workers' compensation act and, therefore, the Office of Workers' Compensation had exclusive jurisdiction. Accordingly, the district court lacked subject matter jurisdiction in this case.*

*Southwest*, 942 So.2d at 756 (emphasis added). The defendants argue that this language supports their contention that jurisdiction over the La.R.S. 40:2203.1 claims must lie with the OWC, yet this language more accurately reflects judicial oversight on the part of this court than a correct statement of the law. As our jurisprudence in the area of subject matter jurisdiction directs, the exercise of original jurisdiction by the OWC rather than by a district court is an exception to the general rule, and is valid only when justified clearly by explicit statutory language. *See Cajun Bag*, 651 So.2d at 948 ("Article 5, Section 16 [of the Louisiana Constitution] requires the Louisiana legislature to enact a specific provision designating a claim as a 'worker's compensation matter' before the district courts will be divested of jurisdiction over a claim."). In order for jurisdiction to lie with the OWC, it is not enough for the resolution of a claim merely to affect the payment of benefits under the WCA; unless that claim arises explicitly out of the WCA, original and exclusive subject matter jurisdiction must lie with the district court. Moreover, in light of this rule, neither

was this court justified in invoking our desire for judicial efficiency in order to extend the jurisdiction of the OWC past the boundaries imposed by the WCA. Because we now hold that a claim brought pursuant to La.R.S. 40:2203.1 for failure to comply with the provisions of that statute "arises out of" the PPOA and not the WCA, this court hereby disavows that portion of our holding in *Southwest* which suggests that subject matter jurisdiction for such a claim could lie properly with the OWC. As with all other civil or criminal matters not specifically excepted by either the constitution or legislation, original jurisdiction of such claims lies properly with the district court.

**ASSIGNMENT OF ERROR #2:**

The defendants next assert that the trial court abused its discretion in certifying this matter for class action treatment under La.Code Civ.P. art. 591.

Louisiana Code of Civil Procedure Article 591 reads, in pertinent part:

A. One or more members of a class may sue or be sued as representative parties on behalf of all, only if:
(1) The class is so numerous that joinder of all members is impracticable.
(2) There are questions of law or fact common to the class.
(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class.
(4) The representative parties will fairly and adequately protect the interests of the class.
(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case.
B. An action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
. . . .
(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or
(3) The court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:
(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

8

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation;

In order for class certification to be proper, "the burden is on the plaintiffs to establish that the statutory criteria for a class certification are met." *Duhe v. Texaco, Inc.*, 99-2002, p. 11 (La.App. 3 Cir 2/7/01), 779 So.2d 1070, 1078, *writ denied*, 01-637 (La. 4/27/01), 791 So.2d 637; *see also Clark v. Trus Joist MacMillian*, 02-676, 02-512, (La.App. 3 Cir. 12/27/02), 836 So.2d 454, 459, *writ denied*, 03-275 (La. 4/21/03), 841 So.2d 793 ("Plaintiffs must establish by preponderance of the evidence that each of the elements for class certification has been met."). However, "[t]he district court has wide discretion in deciding whether to certify a class and the decision will not be overturned absent a finding of manifest error or abuse of discretion." *Roberson v. Town of Pollock*, 05-332, p. 9 (La.App. 3 Cir. 11/9/05), 915 So.2d 426, 432, *writ denied*, 06-213 (La. 4/24/06), 926 So.2d 550. Further, "[t]he court should err on the side of maintaining the class action since the judge may always modify or amend the class at any time prior to a decision on the merits." *Clark*, 836 So.2d at 459-60 (citing La.Code Civ.P. art. 592(3)(c)). Thus, unless the trial court abused its wide discretion in certifying the class in the instant case, the class certification must stand.

**Louisiana Code of Civil Procedure Article 591(B)(3):**

**Predominance of Common Questions:**

The defendants first charge that the trial court abused its discretion by

9

concluding, pursuant to La.Code Civ.P. art. 591(B)(3)(a), that questions common to members of the class predominate over those affecting only individual members. Specifically, the defendants assert that certain individualized inquiries necessitated by the case at bar predominate over any issues common to the class: namely, the determinations of whether proper notice was given to each named plaintiff, of whether each provider waived or was estopped from asserting his or her rights under the PPOA, and of what statutory penalty applies properly for each instance of prohibited conduct. We disagree.

The defendants claim that whether or not the various forms in which the defendants transmitted information regarding PPO discounts to healthcare providers qualify as "notice" under La.R.S. 40:2203.1 stands as an inherently individualized inquiry, yet the case at bar frames the question of notice as decidedly common to the members of the class. As discussed above, defendants' liability under La.R.S. 40:2203.1 in the instant case hinges on whether or not adequate notice of a discount taken pursuant to a PPO agreement was given to the healthcare provider, either "when medical care is provided"—in instances where a benefit card has been issued—or "at least thirty days prior to accessing services through a participating provider"—where no benefit card has been utilized. La.R.S. 40:2203.1(B)(1-5). As such, rather than merely being common to the class, the question of what exactly constitutes adequate notice under the PPOA is central to the claims asserted by all members of the class, and thus it predominates over individualized issues in satisfaction of La.Code Civ.P. art. 591(B)(3). Within this context, we find the defendants' assertion that variations in the form of communications regarding PPO discounts violate the commonality and predominance requirements of La.Code Civ.P. art. 591(B)(3) to be without merit.

The defendants further claim that the potential applicability of various affirmative defenses to the claims of individual class members defeats the

10

predominance of common issues called for under La.Code Civ.P. art. 591(B)(3). In support of such contention, the defendants cite *Banks v. New York Life Insurance Co.*, 98-551 (La. 7/2/99), 737 So.2d 1275. There, in holding that a trial court abused its discretion in certifying several plaintiffs' claims of fraud and negligent misrepresentation as a class action, the supreme court proclaimed:

> In sum, we conclude that there are too many individual issues affecting New York Life's and its agents' liability in this case to find that common issues predominate. As stated in *In Re Ford Motor Co. Vehicle Paint Litig.*, 182 F.R.D. 214, 200 (E.D.La.1998), "[w]hen defendant's conduct means different things for different class members, trying the issue of its liability for that conduct on an aggregated basis is problematic."

*Id.* at 1283. The defendants now ask this court to reach a similar result in the case at bar, yet, as *Banks* makes clear, the result reached in that case turned on the nature of the underlying claims asserted:

> First, we recognize the essence of plaintiffs' claims are fraud and negligent misrepresentation causes of action committed by New York Life and its agents. In *Young v. Ray Brandt Dodge, Inc.*, 176 F.R.D. 230 (E.D.La.1997), plaintiffs brought suit for certification of a class of Louisiana automobile buyers who purchased and financed liability insurance from defendants. In denying certification the court reasoned that *because the underlying claims are based on fraud, a reliance of each aggrieved person as to each credit purchase must be shown. A fraud class action cannot be certified when individual reliance will be an issue.*

*Id.* at 1281 (emphasis added). In contrast to the fraud claims at issue in *Banks*, the case at bar does not involve underlying claims that require the reliance of individual claimants in order for liability to attach. On the contrary, by the terms of La.R.S. 40:2203.1(G), liability for the claims at issue here depends simply upon "[f]ailure to comply with the provisions of Subsection A, B, C, D, or F of [the] Section . . . ." Thus, we find the defendants' argument that the asserted applicability of various affirmative defenses defeats the predominance of common issues required under La.Code Civ.P. art. 591(B)(3) to be without merit. Whatever the applicability of

11

affirmative defenses in limiting or extinguishing the defendants' liability to certain individual claimants, the initial imposition of such liability remains rooted solely in the failure to give timely notice.

Finally, the defendants assert that the penalty phase of the lawsuit will defeat the La.Code Civ.P. art. 591(B)(3) predominance requirement. In pertinent part, La.R.S. 40:2203.1(G) provides:

> Failure to comply . . . shall subject a group purchaser to damages payable to the provider of double the fair market of the medical services provided, but in no event less than the greater of fifty dollars per day of noncompliance or two thousand dollars, together with attorney fees to be determined by the court.

The defendants argue that the necessity of determining statutory penalties in the case at bar precludes predominance, in that calculating such penalties involves the consideration of individual issues that predominate over common issues. In support, the defendants cite *Defraites v. State Farm Mutual Automobile Insurance Co.*, 03-1081 (La.App. 5 Cir. 1/27/04), 864 So.2d 254. There, in ruling that the necessity of determining statutory damages individually for a number of automobile accident cases precluded the certification of those claims as a class action, the fifth circuit held: "Claims for diminution of value *as well as claims for failure to comply with statutory obligations to initiate loss adjustment must be assessed on an individual basis. Plaintiff's claim for statutory penalties also requires individualized proof.*" *Id.* at 261 (emphasis added). The defendants request that we interpret that language to require individualized proof for the statutory penalties associated with the instant case, yet, as with *Banks*, *Defraites* makes clear that, rather than the involvement of a statutory penalty provision generally, the disposition of that case hinged instead on the type of claim underlying the proposed class action:

> By this action, plaintiff seeks a declaratory judgment applicable to the entire class that State Farm is obligated to pay a third party claim of diminution in value due solely to the fact that the vehicle was

12

involved in an accident. There is no dispute in this case that diminution in value is an available item of damages in an automobile accident case. However, Louisiana law does not presume that there is inherent diminution in value involved in every automobile accident. Rather, recovery in automobile accident cases is generally limited to the cost of repair. *Romco, Inc. v. Broussard*, 528 So.2d 231 (La.App. 3 Cir. 6/22/88), *writ denied*, 533 So.2d 356 (La.11/28/88). Additional damages may be recovered for diminution in value by virtue of the automobile being involved in an accident, *provided proof of such diminished value is made*.

*Id.* (emphasis added). In effect, *Defraites* required individualized assessments of claims not because statutory penalties were involved, but because liability for the claims involved in that proposed class action hinged upon claimants' ability to prove diminution in value, which in turn needed to be established on an automobile-by-automobile basis. Here, by contrast, the determination of class-wide liability is in no way dependent upon the calculation of penalties, whether statutory or otherwise. As such, the instant matter aligns squarely with the holding in *Bartlett v. Browning-Ferris Industries Chemical Services, Inc.*, 99-494 (La. 11/12/99), 759 So.2d 755. There, the supreme court stated: "As we have made clear before and reiterate today, the mere fact that varying degrees of damages may result from the same factual transaction and same legal relationship or that class members must individually prove their right to recover *does not* preclude class certification." *Id.* at 756; *see also McCastle v. Rollins Envtl. Serv. of La.*, 456 So.2d 612, 620 (La.1984) ("With respect to the question of damages, individual questions of quantum do not preclude a class action when predominant liability issues are common to the class."). Thus, we find the defendants' argument that the damages phase of this class action will preclude the predominance of common issues required by La.Code Civ.P. art. 591(B)(3) to be without merit.

**Class Action Superiority:**

The defendants next charge that the trial court abused its discretion by

concluding, pursuant to La.Code Civ.P. art. 591(B)(3), "that a class action is superior to other available methods for the far and efficient adjudication of the controversy." More particularly, the defendants argue that a class action is inferior because individual claims are sufficiently great to support individual suits, because the aggregation of statutory penalties is an abuse of the class mechanism, and because class litigation will be unmanageable. We disagree.

The defendants first argue that the value of individual claims is sufficiently great to invalidate the superiority of a class action as the means for adjudicating the case at bar. Specifically, the defendants argue that because the amount of recovery available to individual plaintiffs is substantial enough to support individual suits, cumulation of the claims at issue into one class action provides no benefits not secured by individual litigation. In response, the healthcare providers argue that, the value of individual claims notwithstanding, the interest of the judicial system in avoiding multiple lawsuits with potentially inconsistent results is a compelling enough reason to find superiority. We agree. The issue raised by the instant case strongly resembles that found in *Oubre v. La. Citizens Fair Plan*, 07-66 (La.App. 5 Cir. 5/29/07), 961 So.2d 504, *writ denied*, 07-1329 (La. 9/28/07), 964 So.2d 363. In that case, in response to a challenge to the superiority of class action proceedings, the plaintiffs argued that the risk of inconsistent adjudications which could potentially be dispositive of the interests of class members who were not parties to individual suits validated the superiority of the class action. In holding that the class action was superior, the fifth circuit reasoned:

> In the present case, each plaintiff's claim involves whether or not Citizens failed to timely initiate loss adjustment under the provisions of LSA–R.S. 22:658(A)(3). There should be uniformity in the application of this law . . . This uniformity can only be obtained by utilizing the class action procedure. Further, the class action procedure is a superior method under these circumstances to ensure individual fairness and to promote judicial efficiency.

14

*Id.* at 512. Here, as in *Oubre*, the possibility of individualized litigation producing inconsistent results is too great to conclude that the trial court abused its wide discretion in determining the superiority of class action treatment. Thus, we find this argument to be without merit.

The defendants next argue that the aggregation of potential statutory penalties effectuated by cumulation of the claims at issue into a single class action invalidates the superiority of class action procedure in the case at bar. In effect, the defendants argue that certifying the matter now before us for class action treatment imposes inordinate monetary strain upon the defendants, in that the potential financial liability produced by aggregating the healthcare providers' myriad claims into one action frames individual litigation of claims as the superior method of resolving the disputes at issue here. We disagree. Certifying the instant matter for class action treatment does nothing to increase the defendants' potential monetary liability for their alleged violations of the statute. On the contrary, class certification serves only to cumulate the myriad claims for penalties already asserted against the defendants into a single, more manageable action. Moreover, were we to ratify the defendants' argument that the current matter should not be certified as a class action, the defendants would actually be subject to increased costs, as the costs of defending a single action would be supplanted by the more prohibitive costs associated with defending multiple individual suits in numerous different courts. Within this context, we are loathe to hold that the trial court abused its vast discretion in holding that class action treatment was superior to any other available method for resolution of the instant matter. As such, we also find this argument to be without merit.

Finally, the defendants argue that class action treatment is not superior to other available methods of adjudication because class litigation will be unmanageable. As

their sole ground for support of such contention, the defendants note the high number of hospitals, physicians, and chiropractors located within the state of Louisiana, most of whom would fall within the putative class of healthcare providers embraced by the case at bar.[1] As such, the defendants claim that a class action is not superior to other available methods for resolving the claims at issue here. We disagree. It is true that a class action involving so expansive a class likely will be unwieldy, yet, as discussed above, the cumbersome nature of class action treatment for the case at bar is significantly outweighed by the virtue of avoiding inconsistent results by concentrating the claims into a single action. Whatever the difficulties likely to be encountered in the management of the instant case, then, a class action remains the most efficient available method for resolving the numerous related claims asserted by the healthcare providers against the defendants. Thus, we find this argument to be without merit.

**Louisiana Code of Civil Procedure Article 591(A)(3-4):**

The defendants next argue that class certification was improper because one of the representative parties of the class, Lake Charles Memorial Hospital (LCMH), fails to satisfy the typicality and adequacy requirements of La.Code Civ.P. art. 591(A)(3-4). Specifically, the defendants contend that LCMH has a conflict of interest that prevents it from serving as a class representative, in that LCMH has an intertwined business relationship with Lake Charles Physician Hospital Organization (LCPHO), which could be construed as a "group purchaser" for PPOA purposes. As such, the defendants argue that LCMH cannot make decisions that are in the best interest of the class, as it is effectively indistinguishable from an entity—here,

_____

[1] The defendants submit that there are currently 240 hospitals in Louisiana, more than 10,500 physicians with Louisiana business addresses, and more than 500 chiropractors licensed to practice in this state. As the sources of these statistics, the defendants list the respective websites of the Louisiana Hospital Association, the Louisiana State Board of Medical Examiners, and the Louisiana State Board of Chiropractic Examiners.

LCPHO—that will be subject to the same penalties under the PPOA that LCMH seeks to impose against the named defendants in the instant case. We disagree.

The defendants claim that LCMH's conflict arises from LCPHO's engaging in activities that cast it in the same mold as the named defendants in this class action, yet the scope of LCPHO's business does not include those activities which the healthcare providers allege to be in violation of La.R.S. 40:2203.1. As the healthcare providers point out in their brief, LCPHO does not pay claims, discount bills, or provide access to networks under which discounts are taken. Within this context, we find no basis for concluding that LCPHO's interests preclude LCMH from acting in the best interests of the claimant class. Whether in combination with LCMH or in its own right, LCPHO simply has no conflict with the named defendants in the instant case.

The defendants further argue that two of the class representatives, LCMH and Dr. Gunderson, cannot serve adequately under La.Code Civ.P. art. 591(A)(4) due to a federal stay order enjoining them from pursuing claims against one of the defendants, First Health. While we agree that the stay order prevents those plaintiffs from serving as class representatives with respect to the claims against First Health, such an order does nothing to render LCMH and Dr. Gunderson inadequate as class representatives for those claims asserted against the other defendants. In addition, as for those claims against First Health, two other named plaintiffs whose claims are not stayed have been found to be adequate representatives. Most notably, the record indicates that the certifying judge, Judge Wyatt, was aware of the alleged conflict before he certified the class with both Gunderson and LCMH as class representatives. Affording due deference to the vast discretion with which the trial judge is imbued, we find this argument to be insufficient to invalidate the certification of the class.

**Louisiana Code of Civil Procedure Article 591(B)(2):**

17

Next, the defendants argue that class certification was improper in that the trial court specifically certified the class pursuant to both La.Code Civ.P. art. 591(B)(2) and La.Code Civ.P. art 591(B)(3). The defendants contend that, because the healthcare providers failed to demonstrate that they are seeking primarily injunctive relief, as required for class certification under La.Code Civ.P. art. 591(B)(2), the certification order must be reversed. We disagree.

Louisiana Code of Civil Procedure Article 591(B) reads, in pertinent part:

> An Action may be maintained as a class action only if all of the prerequisites of Paragraph A of this Article are satisfied, and in addition:
> . . . .
> (2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; *or*
> (3) The court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

(Emphasis added). The defendants ask that we reverse the certification order based upon the instant matter's alleged deficiencies in satisfying La.Code Civ.P. art. 591(B)(2), yet even assuming arguendo that those deficiencies are present, the Code mandates that a class action may be maintained provided that *either* La.Code Civ.P. art. 591(B)(2) *or* La.Code Civ.P. art. 591(B)(3) is satisfied. As discussed above, we have already found the defendants' challenges predicated upon La.Code Civ.P. art. 591(B)(3) to be without merit. Therefore, in determining whether the case at bar may be maintained as a class action, the question of whether or not the instant matter measures up to the requirements of La.Code Civ.P. art. 591(B)(2) is moot. Because we hold that certification is proper under La.Code Civ.P. art. 591(B)(3), the case at bar may validly be maintained as a class action.

**Overinclusiveness:**

Finally, the defendants assert that the class definition in the instant matter is

overinclusive, in that it includes claimants who have entered into agreements containing either arbitration clauses or forum selection clauses which designate a forum other than Louisiana for resolution of disputes. As such, the defendants argue that we must amend the class definition to exclude those class members who have confected such agreements. We disagree.

The defendants argue that defining the class without reference to either arbitration clauses or forum selection clauses will result in the extension to certain claimants of the right to litigate in an arena other than that for which they bargained, yet as shown by *Lakeland Anesthesia, Inc. v. United Healthcare of La., Inc.*, 03-1662 (La.App. 4 Cir. 3/17/04), 871 So.2d 380, that is not the case. There, the fourth circuit was confronted with a class action involving several claimants, some of whom were determined to be subject to arbitration agreements. In dealing with such a scenario, the court held that the trial court acted properly in staying the proceedings only as to the claims subject to arbitration and otherwise allowing the class action to proceed for those claims not subject to arbitration. Thus, although those claimants who had agreed to arbitrate were included in the class definition, their arbitration agreements were nevertheless given full effect.

As in *Lakeland*, the instant case involves a class definition that includes no limiting language regarding arbitration clauses or forum selection clauses, yet the absence of such limitations in no way detracts from the effect of such clauses upon the rights of whichever claimants may have agreed to them, assuming that the clauses are in other respects valid. Within this context, the impact of allowing the class definition to remain in its current form is relatively innocuous. The defendants may still move to have claims which are subject to such clauses stayed pending arbitration or resolution in an alternate forum, leaving the class action proceedings to continue uninterrupted as to those claims not subject to such clauses. Thus, particularly in

19

light of the great discretion afforded to the trial court in making class certification decisions, we see no reason now to alter the class definition.

**CONCLUSION:**

For the reasons set forth above, we deny the defendants' application for supervisory writs and affirm the judgment of the trial court. All expenses to be taxed to appellants.

**WRITS DENIED; AFFIRMED.**

CW 07-331, CW 07-400
consolidated with CA 07-264
COURT OF APPEAL, THIRD CIRCUIT
STATE OF LOUISIANA

DR. CLARK GUNDERSON, ET AL.

VERSUS

F. A. RICHARD & ASSOCIATES, INC., ET AL.

PETERS, J., concurring.

I agree that the district court has subject matter jurisdiction in this matter, and that the trial court properly certified this matter as a class action. However, I do not find it necessary to reject the decision rendered in *Southwest La. Hosp. Ass'n v. Superior Carriers, Inc.,* 06-807 (La.App. 3 Cir. 11/2/06), 942 So.2d 754 with regard to the jurisdiction issue because I do not find its holding, that La.R.S. 23:1034.2(F) confers exclusive jurisdiction over the contractual dispute at issue to the Office of Workers' Compensation, in conflict with the trial court ruling in this matter. In the matter now before us, the defendants are different entities from those in either *Southwest* or *Beutler England Chiropractic Clinic v. Mermentau Rice, Inc.*, 05-942 (La.App. 3 Cir. 5/31/06), 931 So.2d 553. In *Southwest,* the defendant was an employer while in *Beutler* the dispute was between the health care provider and the employer/insurer. In the matter before us, the plaintiffs made it a point not to include employers, their insurers, or their self-insured funds. Rather, the defendants are PPO networks, third party administrators, and bill review companies. Since this is not a dispute "between a health care provider and the employee, employer, or workers'

1

compensation insurer," La.R.S. 23:1034.2(F) does not require the suit to be brought in the Office of Workers' Compensation.

That being the case, I reach the same conclusion with regard to the jurisdiction issue, but for different reasons.