# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 17-478

**GEORGE RAYMOND WILLIAMS, M.D., ORTHOPAEDIC SURGERY, A PROFESSIONAL MEDICAL LLC, ET AL.**

**VERSUS**

**BESTCOMP, INC., ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 09-C-5242-A
HONORABLE JAMES P. DOHERTY, JR., DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

**SHANNON J. GREMILLION**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Marc T. Amy, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

**AFFIRMED.**

**Thomas A. Filo**
**Cox, Cox, Filo, Camel & Wilson, LLC**
**723 Broad Street**
**Lake Charles, LA 70601**
**(337) 436-6611**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
  **George Raymond Williams, M.D., Orthopedic Surgery,**
    **A Professional Medical L.L.C.**

**Patrick C. Morrow**
**James P. Ryan**
**Morrow, Morrow, Ryan, Bassett & Haik**
**324 W. Landry Street**
**Opelousas, LA 70570**
**(337) 948-4483**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **George Raymond Williams, M.D., Orthopedic Surgery,**
        **A Professional Medical L.L.C.**

**Stephen B. Murray, Sr.**
**Stephen B. Murray, Jr.**
**Arthur M. Murray**
**The Murray Law Firm**
**909 Poydras Street, Suite 2150**
**New Orleans, LA 70112**
**(504) 525-8100**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **George Raymond Williams, M.D., Orthopedic Surgery,**
        **A Professional Medical L.L.C.**

**John S. Bradford**
**William B. Monk**
**Stockwell, Sievert, Viccellio, Clements & Shaddock, L.L.P.**
**One Lakeside Plaza, Fourth Floor**
**Lake Charles, LA 70601**
**(337) 436-9491**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **George Raymond Williams, M.D., Orthopedic Surgery,**
        **A Professional Medical L.L.C.**

**George D. Fagan**
**Margaret F. Swetman**
**Anton L. Hasenkampf**
**Leake & Anderson. L.L.P.**
**1100 Poydras Street, Suite 1700**
**New Orleans, LA 70163**
**(504) 585-7500**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Chartis Specialty Insurance Company**

**Michael A. Balascio**
**Barrasso Usdin Kupperman**
**909 Poydras Street, 24th Fl**
**New Orleans, LA 70112**
**(504) 589-9700**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Darwin Select Insurance Company**

**Patrick A. McShane, T.A.**
**Carl E. Hellmers, III**
**Heather A. McArthur**
**Frilot LLC**
**1100 Poydras St., Suite 3700**
**New Orleans, LA 70163**
**(504) 599-8000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Landmark American Insurance Company**

**Maureen O. Sullivan**
**Tabitha R. Durbin**
**Christie Noel**
**Jean Ann Billeaud**
**Lewis, Brisbois, Bisgaard & Smith, LLP**
**100 E. Vermilion, Suite 300**
**Lafayette, LA 70501**
**(337) 326-5777**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Illinois National Insurance Company**
    **Westchester Surplus Lines Insurance Company**

**Christine Lipsey**
**Jamie D. Seymour**
**McGlinchey, Stafford, PLLC**
**301 Main St., 14th Fl**
**Baton Rouge, LA 70801**
**(225) 383-3683**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Cinga Health Management, Inc.**

**Marshall M. Redmon**
**Phelps, Dunbar**
**P. O. Box 4412**
**Baton Rouge, LA 70821-4412**
**(225) 346-0285**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Indian Harbor Insurance Company**

**Alex J. Peragine**
**Peragine & Lorio, LLC**
**527 E. Boston St., Suite 201**
**Covington, LA 70433**
**(985) 292-3500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Cannon Cochran Management Services, Inc.**

**James M. White, III**
**Attorney at Law**
**P. O. Box 3939**
**Covington, LA 70434**
**(985) 778-7000**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **CCMSI Holdings, Inc.**

**Angella H. Myers**
**Mark Christopher Carver**
**The Myers Law Group**
**1100 Poydras St., Ste 2520**
**New Orleans, LA 70163**
**(504) 252-9877**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Advantage Health Plans, Inc.**
    **Joseph Bonsignore**

**Gerald A. Melchiode**
**Melchiode Marks King, LLC**
**639 Loyola Ave, Ste 2550**
**New Orleans, LA 70113**
**(504) 336-2880**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Hammerman & Gainer, Inc.**

**Gabriel J. Veninata**
**Hailey McNamara, Hall, Larmann & Papale, LLP**
**P. O. Box 8288**
**Metairie, LA 70011**
**(504) 836-6500**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Stratacare, LLC**

**David C. Bach**
**Attorney at Law**
**4871 Abelia Drive**
**Baton Rouge, LA 70808-1903**
**(225) 803-9661**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Stratacare, LLC**

**Pablo Gonzalez**
**Phelps, Dunbar, LLP**
**365 Canal St., Suite 2000**
**New Orleans, LA 70130-6534**
**(504) 566-1311**
**COUNSEL FOR DEFENDANT/APPELLEE:**
    **Beazley Insurance Company**

**Ryan M. Goudelocke**
**Durio, McGoffin, Stagg**
**P. O. Box 51308**
**Lafayette, LA 70505-1308**
**(337) 233-0300**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Hammerman & Gainer, Inc.**

**Scott T. Winstead**
**Burleson, LLP**
**P. O. Box 131599**
**Spring, TX 77393-1599**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Rehab Review, Inc.**

**Elizabeth C. Austin**
**Brown Sims**
**600 Jefferson St., Suite 800**
**Lafayette, LA 70501**
**(337) 424-1240**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Bestcomp, Inc.**

**Joseph P. Landreneau**
**Gold, Weems, Bruser, Sues & Rundell**
**P. O. Box 6118**
**Alexandria, LA 71307-6118**
**(318) 445-6471**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Dauterive, Women's and Children's Hospital**
     **LRPHO**

**Thomas R. Juneau**
**The Juneau Firm**
**P.O. Drawer 51268**
**Lafayette, LA 70505-1268**
**(337) 269-0052**
**SPECIAL MASTER**

**GREMILLION, Judge.**

Defendants/appellants, Chartis Specialty Insurance Company, Darwin Select Insurance Company, Landmark American Insurance Company, Illinois Union Insurance Company, and Westchester Surplus Lines Insurance Company, appeal the class certification in this matter. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL POSTURE

The plaintiffs seeking class certification in this matter, George Raymond Williams, M.D., Orthopedic Surgery, A Professional Medical L.L.C.; West Louisiana Health Service, Inc., d/b/a Beauregard Memorial Hospital; Joe Wilson; and Wilson Chiropractic Center, Inc., all allege that they represent healthcare providers who rendered treatment to injured employees under the terms of the Louisiana Workers' Compensation Act. These plaintiffs subscribed to preferred provider organization (PPO) agreements with Bestcomp, Inc., which was allegedly insured by the defendant insurers. Plaintiffs allege that Bestcomp discounted their billing in accordance with the PPO agreements without the notice required by La.R.S. 40:2203.1. These discounts were determined utilizing software developed by StrataCare, L.L.C. The plaintiffs were appointed class representatives for purposes of settlement with StrataCare. The defendants were sued under the Louisiana Direct Action Statute in their capacities as the insurers of StrataCare.

The trial court heard the plaintiffs' class certification motion on November 9, 2016. Putative class counsel and class representatives testified. Many exhibits were offered and filed to support and oppose the motion. Among those exhibits was Plaintiffs' Exhibit 4, the corporate deposition of StrataCare, which included a data disc containing information regarding recommended PPO discounts, presented as a Microsoft Excel spreadsheet. It has been asserted by both sides that this disc contains information that may be pertinent to the determination of issues of numerosity and commonality. However, the defendants objected to the introduction of the disc and

maintain that it may not be properly considered by this court. The nature of the defendants' objection was that the data on the disc only showed the PPO discounts StrataCare recommended and not how many were actually taken.[1]

The matter was taken under advisement, and, on February 13, 2017, the trial court issued written reasons. The trial court determined that there were 49,988 claims to be adjudicated, based upon the information on the disc. Because there was evidence that no discount that StrataCare's software recommended was not applied, the defendants argued that additional evidence of an individual nature would be required to adjudicate the claims. The trial court rejected this argument, as the information was readily available and mostly could be gleaned from a relatively small number of sources. The trial court further found that it would be impractical to join all potential claimants, given the existence of 49,988 potential claims.

The trial court found that the issue of commonality was satisfied. The common issue herein, according to the trial court, was whether Bestcomp improperly applied PPO discounts in reimbursing the class members for treatment of workers' compensation patients in failing to provide the notice required by La.R.S. 40:2203.1. The issue, then, in the trial court's eyes was the same as to all claimants.

The trial court found that there were no conflicting or antagonistic claims between the class representatives and the other class members, rejecting the defendants' argument that the class representatives' claims were disproportionate to those of other class members. The defendants also pointed out that Dr. Wilson and Wilson Chiropractic had already settled their claims. Because the measure of damages was not in the specific amount of each discount, but rather lies in the statutory damages imposed for a breach of La.R.S. 40:2203.1, the trial court reasoned, the difference between claims by the class representatives and the class members did not create conflicting or antagonistic claims. Citing federal jurisprudence, the trial

_____

[1] As the trial court noted, this objection really addresses the weight the data should be afforded, not its admissibility, as will be discussed below.

court ruled that a proposed class representative is not disqualified by virtue of a previous settlement. And, the trial court noted, these same proposed class representatives had been appointed to represent the class in the settlement with StrataCare and served in that capacity without objection or criticism. Accordingly, the trial court found the class representatives capable of adequately representing the class in this litigation.

The trial court found that the class was susceptible of being objectively identified in ascertainable criteria. The StrataCare spreadsheet would serve as a means of identifying the potential members without the necessity of inquiring into the merits of each claimant's claim.

Defendants contended that the StrataCare spreadsheet only indicated the recommended discounts; thus, the inquiry into whether discounts were actually taken should predominate over class issues. Further, defendants argued, certain claims might be preempted by the Emergency Medical Treatment and Labor Act, 42 U.S.C.A. § 1395dd. Because this issue addressed the merits of the case, the trial court held that it should not prevent certification of the class. While this might represent an individualized issue, the trial court reasoned, it should not predominate over the common issues of the class. Similarly, the trial court rejected the defendants' contention that the issue of which class member received proper notification, how they received it, and the amount of damages that might be owed to each class member did not predominate over the common issues.

A judgment was signed on March 8, 2017, certifying the following class:

> All medical providers who have provided services to workers' compensation patients as contemplated in La. R.S. 23:1201, *et seq.*, and whose bills have been discounted after January 1, 2000 pursuant to a preferred provider organization agreement, as defined in La. R.S. 40:2202, by and through Bestcomp, Inc. and Stratacare.

Defendants then lodged the present appeal. They assert the following assignments of error:

1. The District Court erred in failing to conduct a rigorous analysis to determine whether Plaintiffs carried their burden of proof to demonstrate that the requirements of Louisiana Code of Civil Procedure article 591 have been met.

2. The District Court abused its discretion in certifying a class where Plaintiffs failed to present the requisite *admissible* evidence that the purported class claims are "capable of resolution on a class-wide basis on common evidence."

3. The District Court erred in finding that common issues predominate when individualized inquiries will be required to determine nearly every aspect of Plaintiffs' claims, including whether any violation occurred with respect to each and every recommended discount.

4. The District Court erred in determining that class adjudication is the superior method of adjudication, despite the fact that the majority of the purported class members have individual claims with alleged values of **at least $200,000 dollars** in addition to their claims for attorneys' fees.

5. The District Court erred by appointing class representatives whose claims are not typical of the purported class they seek to represent, and who do not adequately represent the interests of the purported class members.

6. The District Court erred in relying on an inadmissible, unauthenticated, and incomplete summary submission, which was not "evidence."

## ANALYSIS AND DISCUSSION

The statutory framework for conducting litigation as a class action is provided in La.Code Civ.P. art. 591. Initially, the party seeking class certification must establish that the matter meets five criteria:

(1) The class is so numerous that joinder of all members is impracticable (numerosity);

(2) There are questions of law or fact common to the class (commonality);

(3) The claims or defenses of the representative parties are typical of the claims or defenses of the class (typicality);

(4) The representative parties will fairly and adequately protect the interests of the class (adequacy); and,

(5) The class is or may be defined objectively in terms of ascertainable criteria, such that the court may determine the constituency of the class for purposes of the conclusiveness of any judgment that may be rendered in the case. This prerequisite shall not be satisfied if it is necessary for the

4

court to inquire into the merits of each potential class member's cause of action to determine whether an individual falls within the defined class (definability).

La.Code Civ.P. art. 591(A).

If all the above criteria are met, the proponent of class certification must then prove one of four additional criteria:

(1) The prosecution of separate actions by or against individual members of the class would create a risk of:

(a) Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or

(b) Adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or

(2) The party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or

(3) The court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to these findings include:

(a) The interest of the members of the class in individually controlling the prosecution or defense of separate actions;

(b) The extent and nature of any litigation concerning the controversy already commenced by or against members of the class;

(c) The desirability or undesirability of concentrating the litigation in the particular forum;

(d) The difficulties likely to be encountered in the management of a class action;

(e) The practical ability of individual class members to pursue their claims without class certification;

(f) The extent to which the relief plausibly demanded on behalf of or against the class, including the vindication of such public policies or legal rights as may be implicated, justifies the costs and burdens of class litigation; or

5

(4) The parties to a settlement request certification under Subparagraph B(3) for purposes of settlement, even though the requirements of Subparagraph B(3) might not otherwise be met.

La.Code Civ.P. art. 591(B). These criteria demonstrate the superiority of the class action procedure over litigation involving each member of the proposed class.

In certifying a class, the trial court's findings of fact are subject to review under the manifest error standard. *Gunderson v. F.A. Richard & Assocs., Inc.*, 07-331 (La.App. 3 Cir. 2/27/08), 977 So.2d 1128, *writs denied*, 08-1063, 08-1072 (La. 9/19/08), 992 So.2d 953. The decision to certify a class lies within the discretion of the trial court, which should err in favor of maintaining the class action. *Id.* The burden of proof lies with the party seeking to certify the class. *Id.* The party seeking class certification must prove that the requirements of La.Code Civ.P. art. 591 are *in fact* met; the statutory requirements are not formalities of pleading, and the rule that favors maintaining a class action cannot substitute for actual proof and a rigorous analysis of that proof. *Price v. Martin*, 11-853 (La. 12/6/11), 79 So.3d 960.

Essential to the trial court's findings was the information contained on the data disc. This disc revealed over 49,000 claims, upon which the trial court found "the potential for 49,988 claims and the impracticality of joinder of the individual class members satisfies the numerosity requirement." Defendants argue that the disc was never properly admitted into evidence, as it constitutes a summary, as defined in La.Code Evid. art. 1006, and the underlying documents from which it was generated were not admitted. Further, Defendants argue that the disc was never properly authenticated.

Under La.Code Evid. art. 901(A), "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." The article then describes examples, "[b]y way of illustration only," of authentication methods that satisfy its requirements. La.Code Evid. art. 901(B)

6

During the certification hearing, Dr. Williams's office manager, his wife, Monica Williams, testified about the process of billing and payment. Mrs. Williams compared the information on the spreadsheet with Explanations of Benefits forms (EOBs) they received from the compensation insurers. The EOBs always reflected that a Bestcomp PPO discount was being applied to Dr. Williams's bill. Mrs. Williams also compared sample EOBs with the data on the spreadsheet and testified to the consistency between the EOB data and the spreadsheet data.

Further, Plaintiffs offered the testimony of Ms. Stephanie Lilja, Fee Schedule Compliance Analyst with StrataCare. The disc was offered without an objection as an exhibit to that deposition, and Ms. Lilja reasonably authenticated a printout of data from that disc and testified that she had examined "a majority" of the information on the disc itself, and it appeared to reflect the Bestcomp discounts recommended by StrataCare in Louisiana.

We are satisfied that the totality of the testimony regarding the disc sufficiently demonstrates that it is what Plaintiffs purport it to be, a summary of charges submitted to Bestcomp for which StrataCare recommended whether to apply PPO discounts and the amounts of recommended PPO discounts.

But the disc does appear to meet the definition of a "summary" for purposes of La.Code Evid. art. 1006. By its plain wording, the purpose of the rule is to provide a practical means of presenting voluminous material to the finder of fact. When the source documents originate from the opponent of the summary, the article's requirement that the proponent of the summary to make the originals or duplicates of the source documents available to other parties "at a reasonable time and place" is obviated. *Id.* Further, there was no evidence presented at the hearing that Defendants had not been given an opportunity to examine the source documents. Accordingly, we find that the trial court did not err in admitting, for purposes of the class certification hearing, the data disc. Assignment of error number six lacks merit.

7

We now turn to the effect of the data on the disc in the trial court's decision to certify the class. The trial court was impressed by the sheer number of potential claims. The number of claims, though, is not the issue in determining numerosity; the number of claimants is. *See* La.Code Civ.P. art. 591(A)(1). An examination of the data reveals that there are 618 non-duplicate healthcare provider entries on the spreadsheet. Of those 618 healthcare providers, 349 had their bills reduced pursuant to PPO agreements. That means there are 349 potential claimants, and we find this number easily satisfies the numerosity requirement of La.Code Civ.P. art. 591(A)(1).

Defendants also object to the certification of the class on the basis of a lack of commonality. They argue that proving breaches of La.R.S. 40:2203.1 will require a separate trial as to each alleged violation. In support of this contention, Defendants cite *Price*, 79 So.3d 960.

In *Price*, suit was filed on behalf of a putative class against a manufacturer, and its two successors in ownership, of creosote-treated railroad ties for soil, sediment, groundwater, and building contamination over a sixty-six-year period. During this extended period of time, the manufacturing facility changed ownership, and each owner altered the activities at the plant such that, at unspecified times, the contaminating activities varied. Only two of the three owners were sued. Testimony was presented demonstrating that many of the chemicals by which the plaintiffs alleged their properties were contaminated could have been emitted from sources other than the defendants' operation. Further complicating the case was the fact that the legal standards governing the defendants' potential liability changed during the sixty-six-year period. Exemplary damages for the claims would only be available for actions that occurred from 1984 through 1996, during which time La.Civ.Code art. 2315.3 was in effect. Also, the Clean Air Act, 42 U.S.C.A. §7401-7431, came into effect during the time that the alleged contamination occurred, and it was amended in 1990; both of these federal legislative actions would affect the liability of the

8

defendants. And, each defendant's conduct would differ in time and in the legal standards that would govern their actions. Thus, the supreme court held that the issue of breach of duty could not be proven by common evidence.

Similarly, the plaintiffs were required to show that there was a causal connection between specific emissions and the damage to their properties. They were required to prove this using common evidence. The supreme court found that they could not, because a number of factors beyond the defendants' control—including the actions of the plaintiffs themselves—would yield varying test results, thus casting doubt on the facility as the source of the contaminants.

The facts of *Price*, 79 So.3d 960, are readily distinguished from those in the present matter. Only the conduct of StrataCare is at issue in this case. Each member of the class is alleged to have provided medical care for workers' compensation patients and had their bills discounted without notice pursuant to La.R.S. 40:2203.1.

On the other hand, the facts of the present case are similar to *Gunderson*, 977 So.2d 1128. *Gunderson* involved different defendants, but the allegations as to the alleged misconduct were identical; PPO discounts were applied without notice to discount the bills of health care providers who treated workers' compensation patients.

The defendants interposed the same arguments in *Gunderson* as the present defendants in this matter.[2] This court rejected each of them. The claims involve liability that is imposed "solely in the failure to timely give notice." *Id.* at 1138. The imposition of penalties under La.R.S. 40:2203.1 in no way relies upon the amount of the bill that was discounted. The possibility of inconsistent results and considerations of judicial economy weighed greatly in favor of class treatment, as did the fact that defending individual suits would prove far more expensive to defendants than class treatment. The fact that some claimants' demands are far larger than others' was not of great moment. The fact that Wilson Chiropractic had settled its demands is no

---

[2] Defendants have raised one additional argument in this matter, which will be addressed.

9

more an impediment to his class representation as was a similar situation in *Gunderson*.

Because the named class representatives "each have less than [sixty-five] instances of alleged discounts, involving only one or a few patients," as opposed to other members of the putative class, for whom the "typical" claim exceeds $200,000.00, Defendants argue that the class representatives lack the typicality to adequately represent the class. The typicality "element determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Baker v. PHC-Minden, L.P.*, 14-2243, p. 21 (La. 5/5/15), 167 So.3d 528, 543. Thus, "A plaintiff's claim is typical if it arises out of the same event, practice, or course of conduct giving rise to the claims of the other class members and those claims arise from the same legal theory." *Id.* In the present matter, while the class representatives' claims my not be as great as those of other members of the class, they do arise from the same conduct and recovery is sought under the same legal theory. The trial court did not manifestly err in finding this element of La.Code Civ.P. art. 591 satisfied.

Defendants have raised an additional argument not addressed in *Gunderson*: imposing a $2,000.00 penalty for each infraction may be constitutionally prohibited given the relatively minor amounts of some of the discounts. In support of their proposition, Defendants cite *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S.Ct. 1589 (1996). The *Gore* case establishes several criteria a court must consider in determining whether a punitive or exemplary damage award or a fine exceeds the limits of the Due Process Clause: the scope of the state's legitimate interest in deterring certain conduct; whether there existed adequate notice that such conduct would be penalized and the degree to which it would be penalized; "the degree of reprehensibility" of the conduct; "the disparity between the harm or potential harm

10

suffered" as a result of the conduct and the penalty imposed; "and the difference between this remedy and the civil penalties authorized or imposed in comparable cases." *Id.* at 575. We do not see that the resolution of this issue would require any individualized inquiry, because the evidence proving a violation of the statute is common to all claims. The state's interest in deterring the conduct will be the same. The degree of reprehensibility of the conduct will be the same. There is no difference between the remedy imposed by La.R.S. 40:2203.1 in one case versus another. The only inquiry of an even remotely individual nature is the disparity between the harm or potential harm suffered and the penalty imposed, and we do not view this of a sufficiently individual nature to warrant not handling this on a class-wide basis.

## CONCLUSION

We cannot say the trial court manifestly erred in finding that the requisites for class certification of La.Code Civ.P. art. 591 were met. We certainly cannot say the trial court abused its discretion in certifying the class. The judgment of the trial court certifying the class is affirmed. All costs of this appeal are taxed to defendants/appellants, Chartis Specialty Insurance Company, Darwin Select Insurance Company, Landmark American Insurance Company, Illinois Union Insurance Company, and Westchester Surplus Lines Insurance Company

**AFFIRMED.**

11