# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 09-1537 consolidated with 09-1538 and 09-1539

**ANTONIO G. RODRIGUEZ**

**VERSUS**

**INTEGRITY CONTRACTING, ET AL.**

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION - # 4
PARISH OF LAFAYETTE, NO. 04-1827
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**\*\*\*\*\*\*\*\*\*\***

## MARC T. AMY
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of Jimmie C. Peters, Marc T. Amy, and J. David Painter, Judges.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**

Gregory E. Bodin
Baker, Donelson, Bearman,
Caldwell & Berkowitz, P.C.
450 Laurel Street, 20th Floor
Baton Rouge, LA  70801
(225) 381-7000
COUNSEL FOR DEFENDANT/APPELLANT:
    Louisiana Workers' Compensation Corporation

Kirk L. Landry
Keogh, Cox & Wilson, Ltd.
Post Office Box 1151
Baton Rouge, LA  70821
(225) 383-3796
COUNSEL FOR DEFENDANT/APPELLANT:
    Vaughan Roofing & Sheet Metal, Inc.

**Robert M. Martina**
**Galloway & Jeffcoat, LLP**
**Post Office Box 61550**
**Lafayette, LA   70596**
**(337) 984-8020**
**COUNSEL FOR DEFENDANT/APPELLEE:**
     **Integrity Contracting**

**Janice H. Barber**
**Post Office Drawer 1909**
**Sulphur, LA   70664-1909**
**(337) 625-4443**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Antonio G. Rodriguez**

AMY, Judge.

The claimant sought compensation benefits from his direct employer, its insurer, and an alleged statutory employer. The statutory employer demanded indemnification from the defendant insurer, based on contractual and statutory claims. The workers' compensation judge ultimately found the statutory employer, the direct employer, and the insurer were liable, in solido, for benefits, penalties, and attorney fees. It ordered indemnification by the insurer only on statutory grounds as it concluded that it lacked subject matter jurisdiction to consider the contractual indemnity claim. Both the statutory employer and the defendant insurer appeal. For the following reasons, we affirm the workers' compensation judge's ruling and award additional attorney fees for work performed on appeal.

## Factual and Procedural Background

Antonio Garcia Rodriguez (also identified in the pleadings and the record as Antonio Garcia) alleged that he sustained injury on February 6, 2004 when he fell from a roof while performing roofing work for Integrity Contracting. He filed this workers' compensation matter, claiming benefits from Integrity and its workers' compensation insurer, Louisiana Workers' Compensation Corporation (LWCC). However, LWCC denied coverage, asserting that Integrity failed to pay its premium in December 2003, and, thus, LWCC cancelled the policy.

The claimant further named Vaughan Roofing & Sheet Metal, LLC as a defendant, alleging that the company was liable as a statutory employer. He pointed out that Vaughan had a contract with the University of Louisiana at Lafayette for repair work and that Integrity was performing as a subcontractor. Vaughan denied the relationship and asserted that, in any event, the claimant was precluded from receiving compensation benefits since he was an undocumented worker at the time

of the accident, having remained in this country after the expiration of a work visa. Vaughan filed a third party demand against Integrity, as well as LWCC, seeking indemnification and defense costs.

Although separate suits were filed below, the matters were consolidated.[1] After a hearing, the workers' compensation judge entered a ruling in favor of the claimant and against Vaughan and LWCC. The ruling included an order of indemnity benefits, medical benefits, vocational rehabilitation as needed, and penalties and attorney fees. The workers' compensation judge further determined that the LWCC policy provided coverage to Integrity for the subject accident and that LWCC owed Integrity reimbursement for costs of its defense in the matter.

Thereafter, the workers' compensation judge granted Vaughan's and LWCC's motions for new trial, in part, and issued an amended judgment which: recognized Integrity as the claimant's employer and, thus, a responsible party liable *in solido* with Vaughan and LWCC; recognized the average weekly wage as $487.08 with a compensation rate of $324.75 per week; and granted Vaughan's indemnification claim against Integrity and LWCC pursuant to La.R.S. 23:1063. Further, the workers' compensation judge determined that it lacked subject matter jurisdiction in assessing the contractual claim that resulted in the award of defense costs to Integrity. It, therefore, denied that claim.[2]

_____

[1] For disposition of the companion matters, *see Antonio Garcia v. State of Louisiana*, 09-1538 (La.App. 3 Cir. _/_/10), _ So.3d _; *Jason W. Stanton v. Louisiana Workers' Compensation Corporation*, 09-1539 (La.App. 3 Cir. _/_/10), _ So.3d _.

[2] The recast judgment reads:

> **IT IS ORDERED AND DECREED** that there be judgment in favor of Antonio Garcia Rodriguez against Jason Stanton d/b/a Integrity Contracting, Louisiana Workers' Compensation Corporation, and Vaughan Roofing & Sheet Metal, L.L.C., *in solido*, for indemnity benefits at the rate of $324.75 per week from February 6, 2004 until further order of this Court, subject to a credit for $3250 paid by Jason Stanton; all medical expenses related to the work accident, subject to the

Vaughan and LWCC appeal the reformed judgment. Vaughan assigns the following as error:

1. The workers' compensation judge committed legal error in finding that a statutory employer (as opposed to a direct employer) can be liable for state workers' compensation benefits to an illegal alien. The legal error consisted of: a) improperly applying Louisiana jurisprudence applicable to direct employers to a statutory employer; b) failing to note that the issue is res nova in Louisiana; c) failing to apply directly applicable federal law and U.S. Supreme Court jurisprudence, thereby committing legal error involving the constitutional precepts of preemption, substantive due process and equal protection.

2. The workers' compensation judge committed legal and manifest error in awarding penalties and attorney's fees against Vaughan Roofing & Sheet Metal, LLC as an alleged statutory employer. She committed legal error by failing to distinguish the defenses presented by the direct employer (and its insurer) from those of Vaughan, and thereby failing to consider the separate and independent defenses submitted by Vaughan as more particularly set forth in the preceding assignment of error.

3. The workers' compensation judge committed legal error in awarding any indemnity or wage replacement benefits to the illegal alien claimant. She committed legal error first in failing to state what category or type of benefits were being awarded, instead simply awarding a numerical value. But, based upon

Fee Schedule; vocational rehabilitation as appropriate, except that job availability under La.R.S. 23:1226 and 23:1221(3) shall consider jobs that are appropriate and suitable for Antonio Garcia Rodriguez and would be available **but for** his illegal status; penalties of $4,000; attorney's fees of $18,000; interest as provided by law; and all costs of this case.

**IT IS FURTHER ORDERED AND DECREED** that there be judgment herein in favor of Vaughan Roofing & Sheet Metal L.L.C. against Jason Stanton d/b/a Integrity Contracting and Louisiana Workers' Compensation Corporation, *in solido*, pursuant to La.R.S. 23:1063 for indemnification of compensation payments it may be required to pay as the statutory employer in this case, but denying Vaughan Roofing & Sheet Metal L.L.C.'s claims for its defense costs under § 1063 and § 1201(F) and reserving the rights of Vaughan Roofing & Sheet Metal L.L.C. to bring its contractual indemnity and defense costs claims in a court of proper jurisdiction.

**IT IS FURTHER ORDERED AND DECREED** that the claims of Jason Stanton d/b/a Integrity Contracting against Louisiana Workers' Compensation Corporation for defense costs arising out of the contractual claim arising under the policy issued by Louisiana Workers' Compensation Corporation are hereby dismissed for lack of subject matter jurisdiction, reserving the rights of Jason Stanton d/b/a Integrity Contracting to bring those claims in a court of proper jurisdiction.

3

other factual findings, it is presumed that the only type of benefits that could have been awarded would have been supplemental earnings benefits. However, the workers' compensation judge committed further legal error by improperly shifting the burden of proof to defendants to disprove claimant's entitlement, when the illegal alien claimant did not and could not meet his initial burden.

4. The workers' compensation judge committed manifest error by improperly calculating the claimant's average weekly wage.

5. The workers' compensation judge committed legal error in failing, on jurisdictional grounds and by misapplying applicable statutes, to award defense costs in favor of Vaughan as statutory employer against Stanton/Integrity and LWCC, and in failing to award contractual indemnification in favor of Vaughan and against Stanton/Integrity.

LWCC also appeals, asserting that:

1. The OWC erred as a matter of law in finding that LWCC terminated Policy No. 100154 invalidly and, therefore, had in force and effect a policy of workers' compensation insurance covering Jason W. Stanton, individually, and doing business as Integrity Contracting on February 6, 2004, the date of the Claimant's alleged accident.

2. The OWC erred as a matter of law in finding LWCC liable *in solido* with Stanton/Integrity to indemnify Vaughan for any future compensation payments it may be required to pay as Claimant's statutory employer, as LWCC had no policy in effect providing coverage for Stanton/Integrity, and as Vaughan has not paid any workers' compensation benefits to Claimant, its right to indemnification does not yet exist.

3. The OWC erred as a matter of law in finding that LWCC did not reasonably controvert this claim and awarding penalties and attorney's fees against LWCC when LWCC[] denied this claim in good faith and based on the only applicable law as stated by this Court in *Caesar v. New England Ins. Co.*[, 92-463 (La.App. 3 Cir. 4/7/93), 616 So.2d 850.]

4. The OWC erred as a matter of law in finding that Claimant's illegal alien status has no effect on his eligibility to receive benefits under the Workers' Compensation Act or on the liability and ability of LWCC to provide such benefits and, thus awarding claimant medical and wage benefits and vocational rehabilitation.

4

5.     The OWC erred as a matter of law in finding that the Claimant met his burden of proving the existence and amount of wages, when Claimant submitted no evidence that he was paid a wage; in incorrectly holding that evidence of payments to another was evidence of the amount of Claimant's alleged wages for the purposes of calculating Claimant's average weekly wage and in failing to award the statutory minimum in the absence of evidence of Claimant's actual wages.

The claimant answers the appeal and seeks additional attorney fees for work performed on appeal.

**Discussion**

*Statutory Employer Liability*

It is undisputed that the claimant was an undocumented worker at the time of the accident. Vaughan asserts that this affected his ability to receive workers' compensation benefits in numerous ways. In short, it contends that such benefits violate United States Supreme Court jurisprudence and federal law. It also contends that the award violates its own right to due process and equal protection.

A panel of this court considered the question of whether a direct employer owed an undocumented worker compensation benefits in *Artiga v. M.A. Patout and Son*, 95-1412 (La.App. 3 Cir. 4/3/96), 671 So.2d 1138. In *Artiga*, this court recognized that there is no express statutory provision excluding undocumented workers from workers' compensation coverage. Instead, La.R.S. 23:1035(A) indicates that workers' compensation benefits are applicable to "every person performing services arising out of and incidental to his employment in the course of his own trade, business, or occupation, or in the course of his employer's trade, business, or occupation . . . ." While certain statutory exclusions exist, there is no

5

exclusion for a worker who is in this country illegally. *See*, *e.g.*, La.R.S. 23:1035(B)[3];

La.R.S. 23:1035.2[4]; La.R.S. 23:1037[5]; and La.R.S. 23:1045[6]. The workers'

---

[3] Louisiana Revised Statutes 23:1035(B) provides:

B. (1) There is exempt from coverage under this Chapter all labor, work, or services performed by any employee of a private residential householder in connection with the private residential premises of such householder or any employee of a private unincorporated farm, in connection with cultivating the soil, or in connection with raising or harvesting of any agricultural commodity, including the management of livestock, when the employee's annual net earnings for labor, work, or services amounts to one thousand dollars or less and the total net earnings of all employees of such farm do not exceed two thousand five hundred dollars and which labor, work, or services are not incidental to and do not arise out of any trade, business, or occupation of such householder or private unincorporated farm. With respect to such labor, work, or services and any employee performing the same, a private residential householder or a private unincorporated farmer, shall have no liability under the provisions of this Chapter either as employer or as a principal; however, any person who is engaged in the trade, business, or occupation of furnishing labor, work, or services to private residential premises or farms, shall be liable under the provisions of this Chapter to his employees or their dependents for injury or death arising from and incidental to their employment in rendering such labor, work, or services.

(2) There is also exempt from coverage under this Chapter, musicians and performers who are rendering services pursuant to a performance contract.

[4] Louisiana Revised Statutes 23:1035.2 provides that: "No compensation shall be payable in respect to the disability or death of any employee covered by the Federal Employer's Liability Act, the Longshoremen's and Harbor Worker's Compensation Act, or any of its extensions, or the Jones Act."

[5] Louisiana Revised Statutes 23:1037 provides:

This Chapter shall not apply to any employer acting as a common carrier while engaged in interstate or foreign commerce by railroad, where the employee of such common carrier was injured or killed while so employed; but if the injury or death of an employee of a railroad occurs while the employer and employee are both engaged and employed at the time in an intrastate operation or movement not controlled or governed by the laws, rule of liability, or method of compensation which has been or may be established by the Congress of the United States, then this Chapter shall govern and compensation shall be recovered hereunder; but nothing in this Chapter shall be construed to apply to any work done on, nor shall any compensation be payable to the master, officers or members of the crew of, any vessel used in interstate or foreign commerce not registered or enrolled in the State of Louisiana.

[6] Louisiana Revised Statutes 23:1045 provides that:

A. (1) This Chapter shall not apply to, and there is specific exclusion from the operation thereof for, all members of the crew of any airplane engaged in dusting or spraying operations insofar as such members of an airplane crew might be regarded as independent contractors, subcontractors, or employees of any person, firm, or corporation engaged in the principal business of agriculture or farming operations.

compensation judge referenced *Artiga* in setting forth written reasons for ruling.[7]

        (2) All rights of employers and employees in tort are reserved to the parties.

        B. (1) The provisions of Subsection A of this Section shall not exempt or in any way apply to independent contractors, subcontractors, or employees of any person, firm, partnership, or corporation engaged in the business of applying any products by use of aircraft, either fixed wing or rotor craft, in connection with commercial agricultural, aquacultural, horticultural, silvicultural, floricultural, or agronomic operations or vegetation suppression.

        (2) The provisions of this Subsection shall apply to all independent contractors, subcontractors, and employees of such businesses irrespective of whether such person would be considered a member of the crew of such aircraft.

[7] This portion of the workers' compensation judge's reasons indicate, in part, as follows:

        Since the Artiga case, the legislature has not amended the pertinent provisions, and therefore the same result applies.

        The WCJ finds that Vaughan is the statutory employer of Mr. Garcia pursuant to La.R.S. 23:1061. Vaughan contracted with Integrity, Garcia's direct employer, to provide labor for its contract with the State. Vaughan's main argument is that it should not be held responsible for Integrity's failure to ensure that its laborers were legal. Vaughan distinguishes itself from the Artiga case as an innocent party that took an interest in hiring only legal workers and required same in its contract, yet now is being asked to be responsible for an injured worker it would not have hired, and who cannot be vocationally rehabilitated due to his illegal status. This argument fails to take into account that the employer in Artiga was misled as to Artiga's status. Artiga presented the employer with a "resident alien card" and signed an employment eligibility verification. The employer was only notified 4 months after the accident of Artiga's illegal status. The case did not discuss at all any significance attaching to an "innocent" versus "knowing" or "negligent" hire by an employer. The legal premise of the decision is that the Act does not exclude illegal aliens from coverage, and therefore:

> ". . . It is clear that the entitlement of benefits under the Louisiana Workers' Compensation Act is dependent upon the employee status of the claimant. Once it is shown that a claimant has the employee status, the employe[r] is burdened with showing the application of some specific exclusion under which benefits may be denied." 671 So.2d at 1139

        Mr. Garcia is the statutory employee of Vaughan, and therefore Vaughan is burdened with showing the application of some specific exclusion under which benefits may be denied. Vaughan has argued the preemption of Louisiana workers' compensation benefits by the United States Supreme Court case of *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) which held that the National Labor Relations Board could not award back pay to an undocumented alien. However, Vaughan acknowledges in footnote number 19 of its Pretrial Memorandum and footnote number 9 of its Post Trial Memorandum that while some states have directly responded to the decision in *Hoffman* by amending its compensation laws, Louisiana has not. The Louisiana legislature has failed to respond to both the *Artiga* decision and the Supreme Court in *Hoffman*. The myriad difficulties posed by illegal immigrants in the work force need to be addressed by the legislature if a result

On review, we find that Vaughan has failed to demonstrate why the straightforward reasoning applicable in *Artiga*, 671 So.2d 1138, is inapplicable to it as a statutory employer. A statutory employer's liability for the employee of a direct employer, such as Integrity, is dictated by La.R.S. 23:1061.[8]

---

different from *Artiga* is sought, but under the current interpretation of the Louisiana Workers' Compensation Act, Vaughan is liable to Garcia as the statutory employer under La.R.S. 23:1061(A)(2).

[8] Louisiana Revised Statutes 23:1061, provides for the liability of statutory employers, i.e. principal contractors, as follows:

A. (1) Subject to the provisions of Paragraphs (2) and (3) of this Subsection, when any "principal" as defined in R.S. 23:1032(A)(2), undertakes to execute any work, which is a part of his trade, business, or occupation and contracts with any person, in this Section referred to as the "contractor", for the execution by or under the contractor of the whole or any part of the work undertaken by the principal, the principal, as a statutory employer, shall be granted the exclusive remedy protections of R.S. 23:1032 and shall be liable to pay to any employee employed in the execution of the work or to his dependent, any compensation under this Chapter which he would have been liable to pay if the employee had been immediately employed by him; and where compensation is claimed from, or proceedings are taken against, the principal, then, in the application of this Chapter reference to the principal shall be substituted for reference to the employer, except that the amount of compensation shall be calculated with reference to the earnings of the employee under the employer by whom he is immediately employed. For purposes of this Section, work shall be considered part of the principal's trade, business, or occupation if it is an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

(2) A statutory employer relationship shall exist whenever the services or work provided by the immediate employer is contemplated by or included in a contract between the principal and any person or entity other than the employee's immediate employer.

(3) Except in those instances covered by Paragraph (2) of this Subsection, a statutory employer relationship shall not exist between the principal and the contractor's employees, whether they are direct employees or statutory employees, unless there is a written contract between the principal and a contractor which is the employee's immediate employer or his statutory employer, which recognizes the principal as a statutory employer. When the contract recognizes a statutory employer relationship, there shall be a rebuttable presumption of a statutory employer relationship between the principal and the contractor's employees, whether direct or statutory employees. This presumption may be overcome only by showing that the work is not an integral part of or essential to the ability of the principal to generate that individual principal's goods, products, or services.

B. When the principal is liable to pay compensation under this Section, he shall be entitled to indemnity from any person who independently of this Section would have been liable to pay compensation to the employee or his dependent, and shall have a cause of action therefor.

Vaughan contends that it cannot be held liable for Integrity's employment of the claimant since it "neither knew of the claimant's illegal status nor did it have a duty under federal or state law to inquire into claimant's status." It asserts that it had a right to rely on Integrity's obligation to ensure that its work force was legally working in this county. It argues that it is, therefore, deprived of due process of law under both the United States and Louisiana Constitutions. It states that "the making of contracts is a matter of private concern" and the state has not regulated in this area, "the inclusion of illegal aliens within the compensation scheme renders the agreed to provisions in the contract moot, which would in turn require Vaughan to illegally fund benefits to an illegal alien." It contends that it obviously had a property interest in the amounts paid in compensation.

To the extent that Vaughan asserts that operation of the workers' compensation statutes is unconstitutional as applied to its situation, we do not consider those claims on review as the claim has not been presented in proper form in proceedings below. However, central to Vaughan's overall contention in this area is an apparent argument that its contract with Integrity ensured its lack of liability under the workers' compensation scheme. Yet, La.R.S. 23:1033 provides that "[n]o contract, rule, regulation or device whatsoever shall operate to relieve the employer, in whole or in part, from any liability created by this Chapter except as herein provided." Again, there is no provision in the workers' compensation statutes that excludes coverage for undocumented workers for either direct or statutory employers. We find no error in the workers' compensation judge's recognition that the legislature has not amended the statutory provisions in this regard since the decision in *Artiga*, 671 So.2d 1138.

Neither is there merit in Vaughan's assertion that the workers' compensation judge's ruling runs afoul of *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 122 S.Ct. 1275 (2002). According to Vaughan, *Hoffman* indicates that federal law preempts an award of state workers' compensation benefits to an undocumented worker. However, a reading of *Hoffman* does not support this argument. Instead, *Hoffman* addressed whether an undocumented worker was entitled to back pay following a termination of employment after an employer found him or her to be unauthorized to work. The Supreme Court determined that the worker was not entitled to such pay as it was contrary to federal immigration policy. In particular, such a payment was contrary to the Immigration Reform and Control Act of 1986. While *Hoffman* contains a wealth of information regarding immigration policy, its reach does not include language indicating that a matter of state workers' compensation coverage, such as this, is preempted by this policy. The workers' compensation judge noted an absence of legislation in this state on this topic, stating:

> Vaughan has argued the preemption of Louisiana workers' compensation benefits by the United States Supreme Court case of *Hoffman Plastic Compounds, Inc. v. NLRB*, 535 U.S. 137 (2002) which held that the National Labor Relations Board could not award back pay to an undocumented alien. However, Vaughan acknowledges in footnote number 19 of its Pretrial Memorandum and footnote number 9 of its Post Trial Memorandum that while some states have directly responded to the decision in *Hoffman* by amending its compensation laws, Louisiana has not. The Louisiana legislature has failed to respond to both the *Artiga* decision and the Supreme Court in *Hoffman*. The myriad difficulties posed by illegal immigrants in the work force need to be addressed by the legislature if a result different from *Artiga* is sought, but under the current interpretation of the Louisiana Workers' Compensation Act, Vaughan is liable to Garcia as the statutory employer under La.R.S. 23:1061(A)(2).

We find no error in the workers' compensation judge's statement of the law on this subject.

Neither do we find merit in Vaughan's contention that, due to the circumstances of the claimant's status, numerous definitions and provisions of the Workers' Compensation Act are inapplicable to the claimant, thus revealing a positive statement of inapplicability to an undocumented worker.[9] Again, we find no positive expression in the workers' compensation provision excluding its application in this case. Instead, La.R.S. 23:1035(A) reveals broad applicability.

*Penalties and Attorney Fees*

Vaughan contends that the workers' compensation judge erred in finding that it failed to reasonably controvert the payment of benefits in light of its arguments regarding the inapplicability of the Workers' Compensation Act to an undocumented worker. It contends that its actions in denying benefits should have been considered separately from those of the direct employer.

Louisiana Revised Statutes 23:1201 provides that:

> F. Failure to provide payment in accordance with this Section or failure to consent to the employee's request to select a treating physician or change physicians when such consent is required by R.S. 23:1121 shall result in the assessment of a penalty in an amount up to the greater of twelve percent of any unpaid compensation or medical benefits, or fifty dollars per calendar day for each day in which any and all compensation or medical benefits remain unpaid or such consent is withheld, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim. The

---

[9] For instance, Vaughan notes that the award of any benefits requires a calculation of an average weekly wage, which, it suggests, is impossible as wages received by an undocumented worker would be illegal and "[i]t is patently unreasonable to include wages illegally obtained in the calculation of an employee's capacity to earn money." Similarly, Vaughan contends that, for calculation of SEBs, there could be "no legal wage to compare before and after an accident" and that vocational rehabilitation could not be used to return a worker to the workplace when he could not be legally employed. Vaughan also references La.R.S. 23:1121's requirement that claimants may be required to periodically submit to medical examinations and argues that it would be inapplicable as the undocumented worker would be "subject to deportation and, thus, may not be available for periodic medical examinations." Finally, Vaughan points to La.R.S. 23:1361 which prohibits an employee from being discharged due to the filing of a compensation claim and asserts that the "remedy is obviously not available to an illegal alien whose very employment and subsequent wages are in violation of federal and state law."

11

maximum amount of penalties which may be imposed at a hearing on the merits regardless of the number of penalties which might be imposed under this Section is eight thousand dollars . . . .

. . . .

(2) This Subsection shall not apply if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer or insurer had no control.

It is clear that the claimant was injured while performing work for Integrity, Vaughan's subcontractor. And, in fact, on appeal, Vaughan does not contest the factual determination as to its status as a statutory employer. Further, it chose to deny benefits in the face of *Artiga* and in the absence of positive legislation excluding a claimant such as Mr. Rodriguez from receiving compensation benefits.

This assignment lacks merit.

*Burden of Proof*

The workers' compensation judge awarded indemnity benefits without specifically defining those benefits as temporary total disability benefits or supplemental earnings benefits. Vaughan asserts that, because the ruling included language regarding the availability of vocational rehabilitation benefits, it indicated that the benefits awarded were SEBs. In turn, it contends that the workers' compensation judge impermissibly applied the burden of proof for an award of SEBs.

In pertinent part, the ruling under review included that:

**IT IS ORDERED AND DECREED** that there be judgment in favor of Antonio Garcia Rodriguez against Jason Stanton d/b/a Integrity Contracting, Louisiana Workers' Compensation Corporation, and Vaughan Roofing & Sheet Metal L.L.C., *in solido*, for indemnity benefits at the rate of $324.75 per week from February 6, 2004 until further order of this Court, subject to a credit for $3250 paid by Jason Stanton; all medical expenses related to the work accident, subject to the Fee Schedule; *vocational rehabilitation as appropriate, except that job availability under La.R.S. 23:1226 and 23:1221(3) shall consider jobs*

12

*that are appropriate and suitable for Antonio Garcia Rodriguez and would be available **but for** his illegal status[.]*

(Italics added; bold in the original).

While the above ruling was, perhaps, premature with regard to the ultimate availability of vocational rehabilitation, we reject Vaughan's assertion that this language indicates that the workers' compensation judge awarded SEBs rather than TTD. The record indicates that only TTD benefits were at issue given the claimant's debilitating injuries[10] and continued difficulties at the time of trial. The inclusion of the vocational rehabilitation language would seemingly be in response to Vaughan's assertion that the Workers' Compensation Act cannot be applied to this case since vocational rehabilitation attempts to return a worker to the workplace. The workers' compensation judge's ruling must be viewed in this light and not, as construed by Vaughan, as an indication that SEBs were awarded. Neither was vocational rehabilitation immediately ordered. Instead, the workers' compensation judge merely recognized its availability "as appropriate[.]"

This assignment lacks merit.

*Average Weekly Wage Calculation*

The workers' compensation judge determined the claimant's average weekly wage to be $487.08. Vaughan contends this determination was manifestly erroneous.

---

[10] The parties stipulated that, as a result of the claimant's fall, he "suffered a burst fracture of L-1, resulting in bowel and bladder incontinence." The claimant testified that, following the accident, he was in the hospital for twenty-two days, his problems have not changed since his release, he is catheterized every six hours, and that he is constantly constipated. The claimant explained his most severe pain stems from his rectum and back. He denied that any physician had released him to return to work. The claimant's pain management physician testified via deposition that the claimant suffers from Cauda Equina Syndrome, a diagnosis reached by other physicians treating the claimant as well. This physician opined that the claimant will not be able to work now or in the future "because of severe pain and bowel and bladder dysfunction."

It argues that the claimant failed to adequately prove his wages insofar as he was paid on a cash basis.

In light of the circumstances of this case, we find no manifest error in the shaping of the AWW.[11] Testimony indicated that the claimant worked on a crew put together by Jose Celedon while employed by Integrity. According to Jason Stanton, an owner of Integrity, Integrity paid Mr. Celedon for the entirety of his crew and did so based upon the amount of work they completed. Thereafter, Mr. Celedon paid the men on his crew. Mr. Stanton explained that he did not consider the men on Mr. Celedon's crew to be his employees.[12] Thus, the claimant was unable to rely upon pay stubs or other documentation from Integrity to establish his pay rate.

However, the claimant testified that he typically made between $350 to $500 per week. Another member of the crew, Miguel Bostos, offered a similar wage range, stating that his pay was typically $405 per week, but that the figure would "go up and down[.]" Mr. Bostos stated that the members of the crew were paid equally. Furthermore, and as noted by the workers' compensation judge in her reasons for ruling, the record includes an audit of Integrity's accounting records for the period

_____

[11] The workers' compensation judge explained:

> The WCJ finds that Garcia's average weekly wage is $487.08. As noted in the plaintiff's Post Trial Rebuttal Brief, LWCC's audit of Jason Stanton reflected that Stanton paid Jose Celedon $52,605.00 for the 18 week period between August 30, 2003 and December 25, 2003. The testimony was consistent that Garcia was working on Celedon's crew at the time of the accident, that Stanton paid Jose Celedon by check and Celedon paid the rest of the crew. The men were paid per square foot. Miguel Bostos testified the men each received between $400 and $500 per week. Mr. Garcia testified he was paid between $350 and $500 per week. The testimony was that the crew varied from 5 to 6 persons, and they worked 3 to 5 days per week, depending on the weather and other variables. Given that the audit of Stanton's records provides the best documentary evidence of what Celedon's crew was paid, and given that the amount is within the range estimated by the witnesses at trial, the sum of $487.08 per week is reasonably supported . . . .

[12] Integrity did not appeal the workers' compensation judge's determinations as to its liability.

14

of May 13, 2003 through December 25, 2003. The workers' compensation judge used the figure contained in this audit, and purportedly paid to Mr. Celedon, as corroboration for the figures advanced by the claimant.

In light of the circumstances of this case, we find no manifest error in the AWW set forth by the workers' compensation judge. Admittedly, the reasons for ruling indicate that the judge's arrival at the figure relied upon sources not typically necessary in a workers' compensation case. However, that does not signal an error in the workers' compensation judge's ruling. Rather, it is a consequence of the irregular employment system utilized in this case. To find merit in Vaughan's argument, would allow it to impermissibly rely on its subcontractor's informal payment system as a defense to circumvent the workers' compensation laws regarding payment of a wage. While this payment may have challenged the workers' compensation judge in precisely shaping the award, we find no manifest error in the figure she ultimately found appropriate.

*Subject Matter Jurisdiction*

As explained above, Vaughan filed a third party demand against both Integrity and LWCC for indemnification and court costs. At the time the workers' compensation judge considered the motions for new trial, she determined that the Office of Workers' Compensation lacked subject matter jurisdiction over the indemnification claim that arose pursuant to the Vaughan/Integrity contract.

On appeal, Vaughan questions this determination, arguing that La.R.S. 23:1310.3(E) provides a basis for jurisdiction on this claim. This paragraph provides:

> Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers' compensation judge shall be vested with original, exclusive jurisdiction *over all claims or disputes arising out of this Chapter,* including but not limited to workers' compensation insurance

coverage disputes, group self-insurance indemnity contract disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for in this Chapter, and cross-claims between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution, concursus proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

La.R.S. 23:1310.3. (Emphasis added.) In particular, Vaughan asserts that its claim is included within La.R.S. 23:1310.3 as it related to a "cross-claim[] between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution[.]"

We conclude that the workers' compensation judge correctly determined the subject matter jurisdiction issue. Here, Vaughan's indemnification and defense claims arose from its contract with Integrity and, in turn, Integrity's contract with LWCC. As in *Broussard Physical Therapy v. Family Dollar Stores, Inc.*, 08-1013 (La. 12/2/08), 5 So.3d 812, no party in this case could dispute whether the main claim arose under the workers' compensation statutory provisions. However, the indemnification claim over which the workers' compensation judge found no subject matter jurisdiction did not. Instead, these indemnification claims stemmed solely from its contract with Integrity. Accordingly, they did not arise under the Act. *See, e.g., id.* In this regard, however, the workers' compensation judge retained jurisdiction over those indemnification claims arising under the Act insofar as she granted Vaughan's indemnification under La.R.S. 23:1063.[13]

_____

[13] Louisiana Revised Statutes 23:1063 provides:

A. A principal contractor, when sued by an employee of a subcontractor or his dependent, may call that contractor, or any intermediate contractor or contractors, as a co-defendant, and the principal contractor shall be entitled to indemnity from his subcontractor for compensation payments paid by the principal contractor on account of an accidental injury to the employee of the subcontractor.

Having found no merit in Vaughan's appeal, we turn to consideration of LWCC's assignments of error.

*Termination of LWCC Policy*

LWCC first questions the workers' compensation judge's determination that a valid policy was in effect at the time of the February 2004 accident due to LWCC's failure to demonstrate that it validly cancelled that policy.

Previously entitled La.R.S. 22:636.4, La.R.S. 22:1267 presently provides, in pertinent part:

> C. (1) If coverage has not been in effect for sixty days and the policy is not a renewal, cancellation shall be effected by mailing or delivering a written notice to the first-named insured at the mailing address shown on the policy at least sixty days before the cancellation effective date, except in cases where cancellation is based on nonpayment of premium. *Notice of cancellation based on nonpayment of premium shall be mailed or delivered at least ten days prior to the effective date of cancellation.* After coverage has been in effect for more than sixty days or after the effective date of a renewal policy, no insurer shall cancel a policy unless the cancellation is based on at least one of the following reasons:
>
> (a) Nonpayment of premium.
>
> . . . .
>
> (2)(a) A notice of cancellation of insurance coverage by an insurer shall be in writing and shall be mailed or delivered to the first-named insured at the mailing address as shown on the policy. Notices of cancellation based on R.S. 22:1267(C)(1)(b) through (g) shall be mailed or delivered at least thirty days prior to the effective date of the cancellation; notices of cancellations based upon R.S. 22:1267(C)(1)(a)

---

B. A principal contractor, when sued pursuant to the provisions of R.S. 23:1021(6) by an independent contractor who is a sole proprietor and who has elected by written agreement not to be covered by the provisions of this Chapter in accordance with R.S. 23:1035 or his dependent, may call such independent contractor as a co-defendant, and the principal contractor shall be entitled to indemnity from his independent contractor for compensation payments paid by the principal contractor on account of an accidental injury to the independent contractor.

17

shall be mailed and delivered at least thirty days prior to the effective date of the cancellation; *notices of cancellations based upon R.S. 22:1267(C)(1)(a) shall be mailed or delivered at least ten days prior to the effective date of cancellations. The notice shall state the effective date of the cancellation.*

(Emphasis added.)

With regard to the coverage issue, the workers' compensation judge explained:

I am going to find that there was an invalid termination of coverage, and I am going to base that on Revised Statute 22:636[.]4 which requires that notice of termination be mailed or delivered ten days prior to the termination. That wasn't done in this case. Ms. Lamb did cite the case of Perkins versus Baptiste, 469 Southern Second 27 for the proposition that the coverage period could extend for the ten-day period. I simply note that that case was decided before at least the current exception of the statute. To my knowledge, there has been no similar interpretation since that time and the parties have cited none. My own research didn't reveal much either.

And I'd like to note that particularly under the facts and circumstances of this case, the termination was confusing as pointed out in Ms. Barber's post-trial memorandum. There is some question as to whether LWCC could actually have reinstated the policy as it had done previously. Also, contributing to the confusion is the fact that premium notices continued to be sent to Mr. Stanton after the purported termination, those invoices being for continued coverage. Certainly, it contributed to the ultimate confusion that we saw at the trial of the matter.

I was interested in Mr. Landry's argument in his brief attempting to demonstrate that, in fact, the policy was paid up. But I have to confess my mind does not wrap easily around numbers; and given our short time frame here, I didn't get to completely determine whether I agreed with him or not. Certainly, I wanted to, but I cannot make that part of my finding today.

I will say that I don't think that the estoppel applies. I probably don't need to get there, and this should be considered just my additional thoughts on the matter. Quality was not the contractual agent at the time that all of this went forward, the contractual agent for LWCC, and the estoppel arguments don't nicely tie in with what the actual agency agreements were at the time. So my ruling is solely based on the statute.

This case is resolved with reference to the exhibits and the statute. LWCC contends that it "issued" a notice of cancellation on December 15, 2003 due to

18

Integrity's failure to pay its premium in full. The notice, which was introduced into evidence, includes a date of December 15th and a scheduled expiration date of December 25, 2003.

However, and although the notice is dated December 15th, LWCC's exhibits support the workers' compensation judge's view that the notice was not mailed until the following day, December 16th. The workers' compensation judge was not manifestly erroneous in taking this date into account in determining that this nine-day period of notice was insufficient under La.R.S. 22:1267(C)(1) insofar as the statute requires that the notice "*be mailed or delivered at least ten days prior to the effective date of cancellation.*"

Although LWCC contends that jurisprudence indicating that, although untimely, the notice of cancellation could be reformed as it provided the insured with actual notice, we reject LWCC's reliance on these cases. *See, e.g.,, Caesar v. New England, Ins., Co.*, 616 So.2d 850 (La.App. 3 Cir. 1993); *Perkins v. Battiste*, 469 So.2d 27 (La.App. 1 Cir. 1985). Instead, the circumstances surrounding this cancellation are unclear at best. Mr. Stanton denied that Integrity received the December 2003 notice of cancellation. Furthermore, and despite the purported cancellation, LWCC sent invoices for the policy into 2004 and also received payments from Integrity in this regard. It did so despite testimony from its representative that, once the policy cancelled on December 25th, it could not be reinstated. In short, and in addition to the explicit wording of La.R.S. 23:1267(C)(1), the record supports the workers' compensation judge's determination that LWCC failed to prove the effective termination of the pertinent workers' compensation policy.

*Solidary Liability*

In light of the finding on the preceding assignment, LWCC's contention that it could not be solidarily liable with Vaughan absent a valid contract is rendered moot.

*Penalties and Attorney Fees*

LWCC alternatively argues that the workers' compensation judge erred in casting it with penalties and attorney fees. It contends that its denial of the claim was reasonably controverted based on its good faith belief that it effectively cancelled Integrity's policy.

We find no manifest error in the workers' compensation judge's determination that penalties and attorney fees were appropriate in this case. The wording of La.R.S. 22:1267 is explicit regarding the time periods associated with notices of cancellation. Furthermore, the confusion surrounding the paperwork, correspondence, and payments associated with the policy were within LWCC's control. This assignment lacks merit.

*Benefits, Calculation of AWW, and Vocational Rehabilitation*

Finally, LWCC adopts the arguments of Vaughan and makes similar arguments regarding the claimant's right to indemnity benefits, the calculation of the AWW, and the availability of vocational rehabilitation. For the reasons set forth above in discussion of Vaughan's claim, these arguments lack merit.

*Answer*

The claimant has answered the appeal, seeking additional attorney fees for work performed in defense of this appeal. In this regard, we award an additional

$5,000 in attorney fees for appellate work necessitated by successfully defending the separate appeals of LWCC and Vaughan.

**DECREE**

For the foregoing reasons, the workers' compensation judge's ruling on appeal is affirmed. We award the claimant/appellant, Antonio Garcia Rodriguez, an additional $5,000 as attorney fees for work performed on appeal. Costs of this proceeding are assessed equally to the appellants, Vaughan Roofing & Sheet Metal, LLC and Louisiana Workers' Compensation Corporation.

**AFFIRMED. ADDITIONAL ATTORNEY FEES AWARDED FOR WORK PERFORMED ON APPEAL.**