# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 20-408


COX, COX, FILO, CAMEL & WILSON, LLC

VERSUS

LOUISIANA WORKERS' COMPENSATION
CORPORATION


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2019-506
HONORABLE RONALD F. WARE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## SHANNON J. GREMILLION
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Candyce G. Perret,
Judges.


**AFFRIMED.**

**Michael H. Rubin**
**McGlinchey Stafford, PLLC**
**301 Main Street, Suite 1400**
**Baton Rouge, LA 70801**
**(225) 383-9000**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Louisiana Workers' Compensation Corporation**

**Gregory E. Bodin**
**Baker, Donelson, Bearman, Caldwell & Berkowitz, PC**
**Chase Tower North**
**450 Laurel Street, 21st Floor**
**Baton Rouge, LA 70801**
**(225) 381-7030**
**COUNSEL FOR DEFENDANT/APPELLANT:**
    **Louisiana Workers' Compensation Corporation**

**Todd A. Townsley**
**Townsley Law Firm**
**3102 Enterprise Boulevard**
**Lake Charles, LA 70601**
**(337) 478-1400**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
    **Cox, Cox, Filo, Camel & Wilson, LLC**

**GREMILLION, Judge.**

This unusual matter presents a question of first impression: whether the duty of good faith and fair dealing imposed by La.R.S. 22:1973(A) applies to workers' compensation insurance policies. Louisiana Workers' Compensation Corporation (LWCC) appeals the judgment of the trial court awarding the law firm of Cox, Cox, Filo, Camel & Wilson, LLC (the Firm) damages in the amount of $150,083.50 and penalties of $300,167.00, plus interest, $1,000.00 in expert witness fees, and all costs resulting from LWCC's failure to procure counsel to defend the Firm in a workers' compensation claim initiated by its former office manager. For the reasons that follow, we hold that La.R.S. 22:1973(A) does apply to workers' compensation policies and affirm the trial court.

## FACTS

Ms. Polly Pousson has worked for the Firm since 1971. Until 2018, she was the Firm's office manager; however, she complained that her vision was becoming increasingly impaired from the strain of working at a computer screen. She reported this to the Firm's managing partner, Mr. Thomas A. Filo, on October 18, 2018. Ms. Pousson's doctor recommended that she limit her work on a computer to four hours a day. The Firm demoted her to assistant office manager and elevated her assistant to fill the office manager's position. Ms. Pousson then filed a January 15, 2019 Disputed Claim for Compensation Form (1008) with the Office of Workers' Compensation Administration (OWC) seeking medical treatment and supplemental earnings benefits (SEBs).

On January 16, 2019, Mr. Filo's assistant, Ms. Amy Maynard, emailed the adjuster for LWCC to inform her of the claim and asked for the name of the Firm's counsel. The adjuster replied the following day to acknowledge the filing of the claim and to advise that counsel had not yet been assigned. Mr. Filo responded the

same day, "You have no idea how much we appreciate this response. This will be fun."

On January 22, 2019, the adjuster emailed Ms. Maynard to advise that outside counsel was being assigned the Firm's defense "due to the apparent conflict that has arisen."[1] One week later, Ms. Maynard forwarded discovery the Firm had received and asked again who was being retained to defend the Firm. That same day, an email was sent by Attorney Gregory Bodin to Mr. Filo asking Mr. Filo call him.

On January 29, 2019, the present petition, alleging that LWCC had breached its obligations to defend the Firm and failed to pay an amount due a person insured under the contract in violation of La.R.S. 22:1973, was filed in the Fourteenth Judicial District Court.

In a series of subsequent communications between Mr. Bodin and Ms. Pousson's attorney, Mr. Bray Williams, Mr. Bodin obtained three extensions of time to file responsive pleadings, the last of which, obtained on March 1, 2019, was indefinite. He communicated these by emails to Mr. Filo. On February 25, 2019, Mr. Bodin proposed to Mr. Williams that LWCC would pay Ms. Pousson benefits retroactive to November 1, 2018, and would continue paying benefits pending the Workers' Compensation Judge's ruling on her claim. In exchange, Ms. Pousson would dismiss the Firm as a party without prejudice.

In the meantime, the Firm took the position that the failure of LWCC to hire an attorney to defend it constituted a breach of La.R.S. 22:1973. This position was communicated by email from Ms. Maynard to Mr. Bodin. Mr. Bodin responded that

_____

[1] The "conflict" has been characterized as both the nature of the Firm's business, which consists exclusively of representing personal injury and workers' compensation claimants, and that the Firm took the position that the claim of its employee of almost forty years was legitimate and compensable.

the statute had no bearing on workers' compensation disputes. The Firm had also responded to discovery Ms. Pousson served on it.

On March 1, 2019, Mr. Williams agreed to grant the Firm an indefinite extension of time to file an answer because he was aware that there was an issue with finding an attorney to represent it. Nonetheless, on March 19, 2019, Mr. Filo prepared and filed an answer and cross claim in the workers' compensation matter in which he did not dispute that Ms. Pousson had sustained an occupational injury or disease and asserted that LWCC had breached its obligations under the policy to defend and indemnify the Firm.

LWCC answered the Firm's suit in the present matter and asserted that La.R.S. 22:1973 did not apply to workers' compensation policies under the terms of La.R.S. 23:1395, which governs the regulation, surplus requirements, reserve requirements, deposit requirements, reporting, and taxation of LWCC.

Mr. Ted Williams, an attorney from Baton Rouge, filed a motion to be substituted as counsel for the Firm in Ms. Pousson's workers' compensation case on June 27, 2019.

LWCC filed exceptions of no cause of action, no right of action, and lack of subject matter jurisdiction in the instant matter on October 18, 2019. That matter was heard on November 27, 2019. At the hearing, counsel for LWCC withdrew its exception of no right of action. The trial court denied the exceptions of no cause of action and lack of subject matter jurisdiction.

Trial of the Firm's demands was held on December 4, 2019. The Firm offered three witnesses, Mr. Filo, Mr. Bray Williams, who testified by deposition, and Mr. Robert Ehler, a certified public accountant who was offered and accepted by the trial court as an expert in the field of accounting. LWCC presented the testimony of Ms. Jamie Bourg, its Assistant Vice President of Claims.

3

Mr. Filo testified he is the managing partner of the Firm. He first became aware of Ms. Pousson's eye condition well before she filed her 1008. He and Mr. Kevin Camel, another partner in the Firm, advised her that she may be eligible to receive SEBs because her hours had been restricted by her doctor. Mr. Camel prepared the employer's report to OWC and reported the matter to LWCC. Mr. Filo testified regarding his discussions with the adjuster beginning in November.

The petition the Firm filed was motivated, according to Mr. Filo, to "get [LWCC] off dead center." Mr. Bray Williams had spoken to Mr. Filo on several occasions and suggested that the Firm should pay Ms. Pousson's benefits and demand reimbursement from LWCC. Mr. Filo was particularly concerned because the Firm's policy did not allow it to make voluntary payments to Ms. Pousson. Nonetheless, Mr. Filo was aware that employers and insurers are liable for workers' compensation benefits, and either could be assessed penalties and attorney fees for failure to pay.

Mr. Filo concentrates on representing claimants in personal injury matters. Because his work focuses on this area, he does not maintain time sheets or other such records. His productivity to the Firm is strictly gauged by the revenue he generates. The only way he knows to determine the value of the time he spent in taking legal action to defend the Firm is to look at his revenue history and extrapolate based on the time he devoted to the workers' compensation case. To this end, he estimated the time he spent and created a document reflecting his estimate of 68.5 hours spent in defending the Firm.

It was for the purpose of determining the value of Mr. Filo's time that Mr. Ehlers was retained as an expert. Mr. Ehlers looked at the revenue Mr. Filo generated for the ten years preceding the claim. If Mr. Filo worked 2,080 hours per year, his hourly rate would be $2,080.50 based upon his ten-year history. Based on

4

Mr. Filo's five-year average, his hourly rate would be $2,107.00. His average over the three years prior to trial would be $2,386.50 per hour.

Mr. Bray Williams testified that he represented Ms. Pousson in her workers' compensation claim. He was aware of the difficulties the Firm had because it was without an attorney for several months. He and Mr. Filo spoke several times during those months. Mr. Filo expressed his opinion that Ms. Pousson's claim was compensable, but the Firm would not pay any benefits to her voluntarily because of the policy language that would absolve LWCC of having to reimburse it. In Mr. Williams' mind, that made the Firm arbitrary and capricious in refusing to pay because the Firm was more concerned about its own money than in compensating its employee. Mr. Williams refused to dismiss the firm without prejudice and proceed against LWCC alone because the law imposes a duty to pay benefits on both the employer and the insurer; penalties and attorney fees can be assessed against either based upon fault.

The Firm rested its case and LWCC moved for an involuntary dismissal on the ground that La.R.S. 22:1973 did not apply to workers' compensation insurance policies. The trial court denied LWCC's motion. LWCC then presented the testimony of its only witness, Ms. Bourg, who testified about the trouble LWCC had in finding an attorney willing to defend the Firm. These efforts began on January 18, 2019. Every attorney LWCC contacted initially indicated that representing the Firm would create a conflict of interest. LWCC was able to convince Mr. Bray Williams to grant an indefinite extension for responding to Ms. Pousson's 1008. Eventually, Mr. Ted Williams was hired to represent the Firm.

LWCC then rested. The trial court took a brief recess, after which its reasons were announced from the bench, finding that LWCC breached its obligation to the Firm of good faith and fair dealing in failing to procure counsel to defend the Firm.

5

The trial court found that the Firm did not manufacture the conflict with LWCC and that Mr. Filo did not needlessly interject himself into the workers' compensation claim for the purpose of creating a conflict. The trial court accepted Mr. Filo's testimony regarding the time he spent defending the firm and Mr. Ehler's method of calculating the revenue loss to the Firm that resulted from Mr. Filo's defense of the Firm. Based upon Mr. Ehler's analysis, the trial court awarded the Firm $150,083.50 in damages and a penalty of double the damage figure, for a total damage award of $450,250.50. This appeal followed.

## ASSIGNMENTS OF ERROR

LWCC asserts that the following actions of the trial court constitute error that warrants reversal:

1       The trial court erred in failing to grant LWCC's exceptions of lack of subject matter jurisdiction and no cause of action.

2       Even if the trial court had subject matter jurisdiction and the plaintiff had stated a cause of action (which are denied), the trial court erred in failing to grant LWCC's motion for an involuntary dismissal.

3       Even if the trial court had subject matter jurisdiction, the plaintiff had stated a cause of action, and the trial court did not err in failing to grant an involuntary dismissal (all of which are denied), the trial court nonetheless erred in finding liability under R.S. 22:1973 and awarding damages and penalties under that statute.

## ANALYSIS

*Subject matter jurisdiction*

LWCC maintains that the trial court lacked subject matter jurisdiction over this claim pursuant to La.R.S. 23:1310.3(F), which states:

> Except as otherwise provided by R.S. 23:1101(B), 1361, and 1378(E), the workers' compensation judge shall be vested with original, exclusive jurisdiction over all claims or disputes arising out of this Chapter, including but not limited to workers' compensation insurance coverage disputes, group self-insurance indemnity contract disputes, employer demands for recovery for overpayment of benefits, the determination and recognition of employer credits as provided for

6

in this Chapter, and cross-claims between employers or workers' compensation insurers or self-insurance group funds for indemnification or contribution, concursus proceedings pursuant to Louisiana Code of Civil Procedure Articles 4651 et seq. concerning entitlement to workers' compensation benefits, payment for medical treatment, or attorney fees arising out of an injury subject to this Chapter.

In endeavoring to ascertain whether La.R.S. 22:1973 applies to workers' compensation policies, we first look to the language of the statute itself. Subsection (D) specifically exempts claims made under health and accident policies. The statute does not exempt any other kind of insurance. Health and accident insurance is one of several "Kinds of Insurance" defined by La.R.S. 22:47. That statute also defines workers' compensation policies. The exclusion by the legislature of health and accident policies from La.R.S. 22:1973 and not others indicates that it did not intend to exclude the others.

Examination of other statutes that impose penalties on insurers is also illustrative. For example, La.R.S. 22:1892 also imposes penalties for improper claims handling practices. Section (A) of that statute, which governs first party claims against insurers, specifically exempts vehicle mechanical breakdown insurers, health and accident insurers, and workers' compensation insurers from its penalties. The specific exemption by the legislature of workers' compensation insurers from the penalties imposed by La.R.S. 22:1982 and not from La.R.S. 22:1973 represents another indication that workers' compensation insurers are not exempt under the latter.

Not every issue with a workers' compensation component falls within the subject matter jurisdiction of OWC as enunciated in La.R.S. 23:1310.3. Pursuant to La.Const. art. 5, § 16, district courts exercise original jurisdiction over all civil matters, and exceptions to that rule are narrowly construed. *Gunderson v. F.A. Richard & Assocs., Inc.*, 07-264, 07-331, 07-400 (La.App. 3 Cir. 2/27/08), 977 So.2d

1128, *writs denied*, 08-1063, 08-1069, 08-1072 (La. 9/19/08), 992 So.2d 953. For example, this court has held that OWC does not possess subject matter jurisdiction over demands for indemnity and contribution by a statutory employer against a direct employer. *Rodriguez v. Integrity Contracting*, 09-1537 (La.App. 3 Cir. 5/5/10), 38 So.3d 511, *writs denied*, 10-1296, 10-1307 (La. 9/24/10), 45 So.3d 1074, 1076, *cert. denied*, *sub nom. Vaughn Roofing & Sheet Metal, LLC v.* Rodriguez, 562 U.S. 1256, 131 S.Ct. 1572 (2011). In determining whether subject matter jurisdiction is vested in OWC when workers' compensation issues are involved, this court looks to the legislation under which a party seeks relief. *Gunderson*, 977 So.2d 1128. If the claim "arises out of a separate act of the legislature," subject matter jurisdiction does not arise under Chapter 10 of Title 23 of the Louisiana Revised Statutes, which governs workers' compensation. *Id.* at 1135. In those instances, OWC does not enjoy subject matter jurisdiction.

The overriding question before the court is whether La.R.S. 22:1973 applies to workers' compensation insurance policies. LWCC's exception of no cause of action was based upon its contention that La.R.S. 22:1973 does not apply to workers' compensation policies. Its motion for involuntary dismissal was similarly grounded. And, per *Gunderson*, La.R.S. 22:1973 governs whether the district court had subject matter jurisdiction.

Louisiana Revised Statutes 22:1973 reads:

> A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

> B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A of this Section:

(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

(4) Misleading a claimant as to the applicable prescriptive period.

(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

(6) Failing to pay claims pursuant to R.S. 22:1893 when such failure is arbitrary, capricious, or without probable cause.

C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.

The statute has been extensively litigated and has generated a prodigious body of jurisprudence. In *Theriot v. Midland Risk Insurance Co.*, 95-2895 (La. 5/20/97), 694 So.2d 184, the supreme court answered one of the most important questions posed by the statute when it held that third parties are afforded a remedy for an insurer's bad faith, but only as to those specific acts enumerated in Subsection (B).[2] While third parties are only afforded a remedy under subsection (B), Subsection (A) establishes a broader duty of good faith and fair dealing in favor of the first-person insured.

---

[2] At the time, the statute was numbered La.R.S. 22:1220. It was renumbered La.R.S. 22:1973 by 2008 La. Acts No. 415, § 1.

9

LWCC points to our decision in *Sneed v. Gilchrist Construction Co.*, 619 So.2d 888 (La.App. 3 Cir.), *writ denied*, 625 So.2d 1059 (La.1993), for the proposition that the district court lacked subject matter jurisdiction. In *Sneed*, an injured employee filed suit against his employer's workers' compensation carrier because it allegedly failed to pay a settlement within thirty days. Citing *Alford v. Travelers Ins. Co.*, 609 So.2d 906 (La.App. 4 Cir. 1992), *writ denied*, 613 So.2d 626 (La.1993), this court found that the Workers' Compensation Act provides exclusive remedies for employees against employers and insurers who engage in arbitrary and capricious claims handling. Thus, the district court lacked subject matter jurisdiction. We distinguish *Sneed* on the basis that it involved a third-party claim against the insurer and did not address a first-party case such as the one at bar. Further, the issue in *Sneed* involved the validity of the claim rather than the fundamental insurance issue of providing a defense to the insured. While we recognize that La.R.S. 23:1310.3 vests OWC with subject matter jurisdiction over workers' compensation coverage issues, we also note that LWCC has not denied coverage; it simply failed to defend the Firm for a significant period of time.

The fact that workers' compensation forms an employee's exclusive remedy for injuries or compensable sickness or diseases was one basis for the *Sneed* and *Alford* decisions. *See* La.R.S. 23:1032. Employees are third parties for purposes of La.R.S. 22:1973. Further, the Louisiana Workers' Compensation Law (the Law) mandates the time and place of payment to an injured employee and gives the employee remedies when the employer or insurer fails to pay timely. *See* La.R.S. 23:1201. The Law makes no such provision for remedies for an employer who might be arbitrarily and capriciously denied a defense under its workers' compensation policy.

10

These factors—that La.R.S. 22:1973 does not form part of the Law, pursuant to the rationale of *Gunderson*; that the Law affords no remedy to an insured who is denied a defense; that workers' compensation insurance is regulated by Title 22; and that workers' compensation insurers are exempted from certain penalty provisions in Title 22 but not from La.R.S. 22:1973—force us to conclude that Section 1973 applies to first-party claims by an insured for arbitrary and capricious refusal of the workers' compensation insurer to defend it and that the district courts maintain subject matter jurisdiction over those claims. Accordingly, LWCC's argument that the trial court erred in failing to maintain its exception of lack of subject matter jurisdiction lacks merit.

### *Cause of action*

LWCC argues that the trial court erred in rejecting its exception of no cause of action, which stated that La.R.S. 22:1973 "is inapplicable under the current circumstances." The argument posed in the exception is that La.R.S. 22:1973 does not afford a remedy to workers' compensation insureds. Further, LWCC argues, the duty to defend is a contractual matter not subject to La.R.S. 22:1973. We have already addressed whether Section 1973(A) can be applied to a workers' compensation insurer. We will now address LWCC's argument that the duty to defend can be a subject of a claim under that provision.

Section 1973(A) imposes the following duties on insurers: "a duty of good faith and fair dealing," "an affirmative duty to adjust claims fairly and promptly," and a duty "to make a reasonable effort to settle claims with the insured or the claimant, or both." The Louisiana Supreme Court has stated, regarding the duty of good faith and fair dealing:

> Although the duty of good faith owed by the insurer to the insured is codified in La. R.S. 22:1973, the bad faith cause of action by an insured against the insurer does not rest solely on this statute.

11

> *Gourley v. Prudential Prop. & Cas. Ins. Co.*, 98-0934 (La. App. 1 Cir. 5/14/99), 734 So. 2d 940, 945 (citing *Smith v. Audubon Insurance Company*, 94-1571 (La. App. 3 Cir. 5/3/95), 656 So. 2d 11, 14, *rev'd on other grounds*, 95-2057 (La. 9/5/96), 679 So. 2d 372). **The duty of good faith is an outgrowth of the contractual and fiduciary relationship between the insured and the insurer, and the duty of good faith and fair dealing emanates from the contract between the parties**. In the absence of a contractual obligation, the duty of good faith does not exist. *See* La. C.C. art. 1759 ("Good faith shall govern the conduct of the obligor and the obligee in whatever pertains to the obligation."); La. C.C. art. 1983 ("Contracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law. Contracts must be performed in good faith."). Because we find an insurer's bad faith is a breach of its contractual obligation and fiduciary duty, we hold the insured's cause of action is personal and subject to a ten-year prescriptive period. *See also* 15 William McKenzie & H. Alston Johnson, *Louisiana Civil Law Treatise: Insurance Law and Practice* § 11:25 (4th ed. 2018) ("Unless otherwise provided by statute, claims under the penalty statutes prescribe in ten years.").

*Smith v. Citadel Ins. Co.*, 19-52, pp. 9-10 (La. 10/22/19), 285 So.3d 1062, 1069 (emphasis added). Good faith, then, is a component of the contractual relationship. For this reason, claims under Section 1973(A) are limited to first party demands.

LWCC also points to the Firm's petition and specifically to the allegation that LWCC failed to pay the claim of Ms. Pousson as statutorily required. We agree that the Firm has no cause of action against LWCC for failing to pay Ms. Pousson's workers' compensation claim timely; however, that allegation did not form a basis for the judgment against LWCC. The trial court awarded damages for LWCC's failure to defend the Firm.

The duty to defend is expressed in the policy. Our courts have characterized this duty as "a high fiduciary duty to discharge its policy obligations to its insured in good faith—*including the duty to defend the insured against covered claims* and to consider the interests of the insured in every settlement." *Pareti v. Sentry Indem. Co.*, 536 So.2d 417, 423 (La.1988) (emphasis added) (citations omitted). In light of

these pronouncements, we find that a breach of the duty to defend can run afoul of the provisions of La.R.S. 23:1973(A).

Another constituent of LWCC's exception of no cause of action is that the damages awarded were attorney fees, and attorney fees are not awardable under Section 1973(A).

*Standard of review*

Questions of law are reviewed by the court of appeal de novo. *City of Youngsville v. C.H. Fenstermaker & Assocs., L.L.C.*, 17-1065 (La.App. 3 Cir. 4/18/18), 244 So.3d 508, *writ denied*, 18-824 (La. 9/21/18), 252 So.3d 907. When a trial court has applied the wrong legal standard in a way that interdicts the findings of fact, the court of appeal may review the case de novo. *Lasha v. Olin Corp.*, 625 So.2d 1002 (La.1993). However, we have concluded that because the trial court had subject matter jurisdiction over the case, it did not apply the wrong standard in this case; accordingly, we review the decision to award damages in this case under the manifest error standard. *Horacek v. Watson*, 11-1345 (La.App. 3 Cir. 3/7/12), 86 So.3d 766.

Under the manifest error standard, this court reviews the entire record, not to determine whether the factfinder's determinations were right or wrong, but whether they are reasonably supported by the record. *Stobart v. State, Dep't of Transp. and Dev.*, 617 So.2d 880 (La.1993). "Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony." *Id.* at 882.

The statutory language also guides our review. The language of La.R.S. 22:1973(C) provides that a claimant under the statute is entitled "to any general or special damages" and "may be awarded penalties[.]" The decision, then, to award

penalties is reviewed under the abuse of discretion standard. *Wegener v. Lafayette ins. Co.*, 10-810, 10-811 (La. 3/15/11), 60 So.3d 1220.

> Appellate review of such discretionary decisions is conducted under the "abuse of discretion" standard of review. Generally, an abuse of discretion results from a conclusion reached capriciously or in an arbitrary manner. *Burst v. Board of Com'rs, Port of New Orleans*, 93-2069 (La.App. 1 Cir. 10/7/94), 646 So.2d 955, 958, *writ not considered*, 95-0265 (La. 3/24/95), 651 So.2d 284. The word "arbitrary" implies a disregard of evidence or of the proper weight thereof. *Burst*, 646 So.2d at 958. A conclusion is "capricious" when there is no substantial evidence to support it or the conclusion is contrary to substantiated competent evidence. *Burst*, 646 So.2d at 958.

*Quality Envtl. Processes, Inc. v. IP Petroleum Co., Inc.*, 16-230, p. 23 (La.App. 1 Cir. 4/12/17), 219 So.3d 349, 375, *writ denied*, 17-915 (La. 10/9/17), 227 So.3d 833.

*Review of the evidence*

Our review of the evidence, taken as a whole, reveals no manifest error in any finding of fact. The insurer and insured disagreed about whether the insured's employee manifested a compensable occupational injury or disease. As a result, the insurer claims, it had difficulty obtaining representation for the insured. Yet, the duty to defend remained, and whether there was a conflict of interest—the nature of which is not readily apparent to the court— is immaterial. Particularly in the context of a workers' compensation case, time is of the essence. The plaintiff may grant an extension such that the employer may refrain from filing an answer without fear of being defaulted, but the deadlines for payment of benefits are not abated by the plaintiff granting that extension, and either the insurer or the employer may be assessed penalties as the WCJ sees fit. The testimony of Mr. Bray Williams on this point indicates the predicament in which the Firm found itself. It believed its employee should be compensated, yet it was prevented from compensating her under its workers' compensation policy; this, Mr. Williams felt, made the Firm itself arbitrary and capricious because it placed its interests above that of its employee.

14

The Firm placed LWCC on notice of the claim the day it was filed. The counsel LWCC finally retained to represent it filed a motion to enroll six months later. In the meantime, discovery was served on the Firm. The Firm was inquiring frequently about who was being hired to protect its interests. Its inquiries went unanswered for months. Under the circumstances, the trial court found that Mr. Filo took the steps the Firm deemed appropriate and began defending the Firm.

The trial court accepted the estimate of the time Mr. Filo spent in this endeavor. Mr. Filo generates a tremendous revenue stream for his firm. LWCC also asserts that the award in this matter is not allowed under La.R.S. 22:1973 because that statute only authorizes an award of damages and not attorney fees. Mr. Filo's efforts on behalf of the firm constitute attorney fees, LWCC maintains; thus, the award is inappropriate.

How one frames a debate often determines its outcome. Where one party sees attorney fees, its opponent sees lost earnings. The trial court accepted the Firm's perspective on the case. Louisiana Revised Statutes 22:1973(A) provides that an insurer who breaches the duty of good faith and fair dealings "shall be liable for any damages sustained as a result of the breach." An attorney's time represents his stock and trade. If his attention is diverted from his client's cases to defend his firm from a loss against which it is insured, the time (and, thus, revenue) he has lost represents damage consequential to the breach of the insurer's obligation to defend. The prohibition against an award of attorney fees in a case under Section 1973(A) prevents the plaintiff from recovering his attorney's fees in the pursuit of the claim, not the consequential damages resulting from the insurer's breach. Accordingly, we find that the award of damages does not represent attorney fees, but rather damages in the form of lost revenues of the Firm.

15

No evidence contradicted Mr. Filo's testimony about the time he spent, estimated though it was. No evidence contradicted Mr. Ehler's calculations about what that time represented to the Firm in terms of revenue. We find no manifest error in the trial court's award of damages. Further, we find no abuse of discretion in the award of penalties. The trial court's decision was not arbitrary, in that it gave proper weight and consideration to the evidence presented and was not capricious because there was substantial evidence supporting it.

## CONCLUSION

We conclude that a cause of action exists for insureds of workers' compensation policies pursuant to La.R.S. 22:1973(A) arising from an insurer's failure to defend its insured. Because La.R.S. 22:1973(A) represents legislation apart from the Louisiana Workers' Compensation Law, subject matter jurisdiction over such claims is vested in the district courts. We find no manifest error in the trial court's ruling. All costs of this appeal are taxed to defendant/appellant, Louisiana Workers' Compensation Corporation.

**AFFIRMED.**